J. C. SAVAGE, et al., v. L. E. ARMSTRONG, et al., Appellants.

**Boundaries:** ACQUIESCENCE: EVIDENCE. Where a boundary fence has
  been recognized and acquiesced in by adjoining landowners for
  a long series of years as marking the true boundary line between
  their lands, and their occupancy has been apparently with ref-
  erence to such fence, the presumption arising from such acqui-
  escence is sufficient to determine the location of the line, unless
  there are controlling circumstances such as will overcome the
  presumption. In the instant case the evidence is held to show
  an established line by acquiescence.

**Same:** ESTOPPEL. It is also held that the conduct of the plaintiffs
  was such as to estop them from contending that the line thus
  acquiesced in is not the true boundary.

*Appeal from Webster District Court.*—HON. C. G. LEE,
JUDGE.

SATURDAY, SEPTEMBER 2, 1912.

ACTION for an injunction restraining defendants from trespassing on plaintiffs' land by erecting a fence thereon, and requiring that defendants remove from said land any fencing material which may have been placed thereon by them. There was a decree for plaintiffs, and the defendants appeal.—*Affirmed.*

*A. N. Botsford* and *Price & Joyce,* for appellants.

*E. H. Johnson,* for appellees.

McCLAIN, C. J.—This controversy relates to a boundary line running east and west between the W. ½ of the N. W. ¼ of section 2 and the E. ½ of the N. W. ¼ of section 3, all in township 88, range 29, in Webster county, on the south, and a tract of land belonging to defendant Armstrong and others on the north. The details of ownership and source of title to these three tracts need not be fully set out, in order to enable us to determine the questions presented on this appeal. It is sufficient to say that the plaintiff J. C. Savage is the owner in his own right of the west eighty above described, having acquired title thereto through his mother in 1903. She had bought it from one Mooney in 1899 and Mooney had been the owner for many years prior to that date. The plaintiffs, including J. C. Savage, are the owners in common of the east eighty above described, which was purchased by Michael Savage, father of J. C. Savage, in 1878, and has been occupied by him, and after his death by his widow, Jane Savage, and certain of his heirs, brothers of J. C. Savage, until the present time. The controversy between these plaintiffs and the defendant, who own or have interests in the tract of land adjoining the two eighty's on the north, arose in the fall of 1910, when the defendants,

through their agents and employees, attempted to erect a new fence on a line somewhat south of the line of an old fence, which had for many years been maintained by plaintiffs and their grantors and the owners of the land to the north of them. Plaintiffs do not ask that their title be quieted to the strip between the two fences, but they seek an injunction to restrain defendants from erecting and maintaining a new fence, and they also ask that the new fence, as partially constructed, and the material to be employed in its construction, be removed from their land. The effect of the decree of the lower court is, however, to establish the true boundary line, and no doubt is as effectual in determining the title of plaintiffs to the strip of land between the old fence and the new fence as though a decree quieting title in plaintiffs to such strip had been expressly asked. In this respect there is no complaint as to the form of the decree. It is conceded that there is a misjoinder of plaintiffs, inasmuch as there is no common ownership of plaintiffs in the west eighty, on the one hand, which belongs exclusively to plaintiff J. C. Savage, and the east eighty, which belongs exclusively to Jane Savage and other plaintiffs, as widow and heirs of Michael Savage; but, although the question of misjoinder was properly raised by defendants, it has been agreed that the cause shall be determined without regard to such misjoinder. The sole question presented is whether the lower court erred in granting the relief prayed by all the plaintiffs as against the defendants.

It is the contention of the plaintiffs that, without regard to the exact location of the boundary line according to the government survey between their two eighties and

I. BOUNDARIES: acquiescence: evidence.

the land of defendants lying to the north of them, a boundary line has been established by the joint maintenance and repair of a fence, which has existed for more than twenty years, between the properties, and that this fence has, by ac-

quiescence, become the true boundary line. Without setting out the evidence in detail, we are satisfied to sustain the conclusion, announced by the lower court, that this fence had been acquiesced in as marking the boundary line for such length of time as that it must be treated as constituting the true boundary line by an implied agreement, unless, for reasons hereafter to be referred to, the plaintiffs are now estopped from insisting that it shall be so treated. The proof of acquiescence for many years, based upon the maintenance and repair of this fence and occupancy of the land to the line thus indicated, is overwhelming. It is true that there seems to have been a controversy between the owners of the land lying east of the east eighty and the owners of the land adjoining it on the north as to whether the fence between them, which was a continuation of the old fence between the lands of the parties to this suit, was on the true line, and that the portion of the fence to the east on the east eighty has been so changed as to create a jog. But we regard this fact to be in itself wholly immaterial. No concessions between other parties as to the continuance of the old fence to the east could affect these plaintiffs. There is testimony as to certain conversations between Michael Savage, then owning the east eighty, and those interested in the location of the fence to the east of his land, tending to indicate an uncertainty on the part of Michael Savage as to whether the old fence was the true line; and there is similar evidence tending to show an uncertainty on the part of Mooney, who owned the west eighty, as to whether the fence as it existed north of his eighty was on the true line. But this evidence falls short of establishing any intention on the part of Michael Savage and Mooney to abandon the claim, which must be implied from the maintenance of the fence for a long time and the occupancy of the land up to the fence as the true boundary, that such fence was the real boundary between their respective eighties and the land to the north; for no

question seems to have been entertained at any time between either Mooney or Michael Savage, on the one hand, and the owners of the land, on the other, as to the fact that this fence was on the true line.

It is true, as contended for appellants, that the inference arising from ten years' acquiescence in a boundary fence and occupancy with reference to such fence as the true line may be overcome by proof of other controlling circumstances inconsistent with and contradicting the inference of acquiescence. *Miller v. Mills County*, 111 Iowa, 654. But, if there are no controlling circumstances sufficient to overcome the inference from acquiescence—that is, if it does not appear that the fence maintained by the parties was so maintained with the understanding that it did not constitute the true boundary line, and occupancy has been apparently with reference to such fence as the boundary line—then the presumption from acquiescence is sufficient to determine the boundary line in controversy. *Keller v. Harrison*, 139 Iowa, 383. As we find no controlling circumstances such as to overcome the presumption from long acquiescence, we are satisfied that prior to the origin of this controversy the old fence had become established as the true boundary line. The evidence does not support the contention of appellants that the old fence was a mere tentative affair and the case of *Webster v. Shrine Temple Co.*, 141 Iowa, 325, is not in point.

Counsel for appellants contend, however, that, irrespective of the question of acquiescence, the record shows that the plaintiffs are estopped by their conduct from now 2. SAME: claiming that the new fence, partially constructed by appellants, and which they are by the decree enjoined from completing or maintaining, is not on the true line. This contention is based upon the alleged conduct of plaintiff J. C. Savage, owner of the west eighty in his own right and owner in common with his mother and his brothers and sisters of the east eighty. The

facts on which this contention is predicated may be briefly stated as follows: On August 12, 1910, one Lind, a surveyor in the employ of defendants, undertook to run a line from the river, situated some distance east, to the highway west of defendants' land, which should determine the true line according to the government survey between the tract of land lying east of plaintiffs' east eighty and the land of defendants lying north of it, and by continuation westward also the true line between the plaintiffs' land and the defendants' land; and it is contended for appellants that Lind then advised J. C. Savage that this survey was being made for the purpose of locating the line of a new fence, and, according to his testimony, this line was run through west to the highway, and was marked by stakes set on the two tracts of land belonging to the plaintiffs, and some of them had knowledge of the fact that this line was south of the line of the old fence. But there is a controversy in the record as to what the conversation between Lind and J. C. Savage actually was, and we reach the conclusion that defendants have not shown by a preponderance of the evidence that J. C. Savage, or any other of the plaintiffs, was advised of any intention to construct a new fence between their property and the property of defendants along the line of this survey. The conversation may well be interpreted as having reference to a new fence east of the properties of plaintiffs, and, as already indicated, the fact that a jog in the fence line east of plaintiffs' property would result from the new survey was not a matter with which plaintiffs were concerned, and was not in itself sufficient to serve them with any notice of an intention to construct a new fence between their land and the land of the defendants. While this survey was being made, one Norton, an agent in charge of defendants' property, as he testifies, telephoned to the Savage home about the survey, stating that it did not appear to run where the old fence stood, and that, if there was dissatisfaction with the new line, Lind should

be notified. No protest seems to have been made to Lind on the part of plaintiffs; but we can not understand why plaintiffs were under any obligation to make a protest against the running of the new line, in the absence of any proof that they were advised of any intention to construct a new fence across their land. Some time in the early part of October following the employees of defendants commenced to set posts on the new line from the east side of the east eighty; but the record does not show that any of the plaintiffs saw or had knowledge of the setting of these posts. Later, and apparently on the 10th of October, defendants' employees commenced setting posts along the new line from the west end—that is, upon J. C. Savage's eighty, and the contention for appellants is that J. C. Savage saw this line of posts extending part way across his eighty, and without objection arranged to have wire hauled to his land for the construction of his portion of the fence, understanding that defendants were about to place wire on the posts which he had seen. Whatever arrangement J. C. Savage made in this respect was on the 11th of October, and on the 12th he and his brothers removed the new and partially constructed fence from his land, having earlier on that day protested to the workmen against the construction of a fence on that line, and having been met with the response that they could be stopped only by the sheriff.

The estoppel contended for is predicated on the fact that on the 10th of October J. C. Savage knew that posts had been set on the new line, that on the 11th he acquiesced in the construction of a fence on that line by arranging for wire to be hauled for his portion of the fence, and that his protest was not made until the day following. What was done by the defendants between the time when J. C. Savage saw the posts set on the new line and the time when he first objected thereto was to stretch some wire fence on the posts thus set. Certainly this is a meager basis on which to predicate an estoppel. But the fundamental difficulty

with defendants' contention is that they failed to bring home to J. C. Savage any knowledge that the line of posts which he saw on the 10th departed substantially from the line of the old fence. It is conceded that the line of the old fence and the new line established by Surveyor Lind terminate at the west end at practically the same point, and that the divergence for some distance from this point to the eastward between the two lines is slight. We are satisfied that J. C. Savage was not bound to know, when he first saw these posts on the 10th, that there was any intention to construct the new fence substantially south of the line of the old fence. The entire divergence at the east line of the west eighty is only twenty feet, while at the east line of the east eighty it amounts to more than forty-two feet. We are unwilling to hold that, by reason of the casual observation which J. C. Savage gave or was bound to give to the slight divergence at the west end of the line, he was charged with notice of an intention that the new fence would depart substantially from the old fence along the entire line, with the effect that by making no protest until the wire had been stretched on these posts as he found it on the morning of the 12th he is estopped, and through him the other plaintiffs, co-owners with him of the east eighty are also estopped, from repudiating the line indicated by these posts as the true line between the land of plaintiffs and the land of defendants. According to the testimony of J. C. Savage, he did not know or understand that defendants were attempting to establish a new line until the morning of the 12th, and at that time he certainly acted with sufficient promptness in repudiating the new line.

We reach the conclusion that there is no basis for an estoppel, as against the plaintiffs, that the old fence represents the true line established by acquiescence between the lands of plaintiffs and those of defendants, and that the decree of the trial court is correct.

Appellants' motion to strike appellees' amendment to the abstract, on the ground that it is unnecessary and not prepared in accordance with the requirements of our rules, has been submitted with the case. On examination of appellees' amendment, we fail to find any good reason for striking it from the files, and the motion is overruled.

The decree of the trial court is—*Affirmed*.