ADA JANE GRAFTON, Administratrix, Appellee, v. FREDERICK A. DELANO et al., Appellants.

RAILROADS:   Accident at Crossing—No Eyewitnesses—Contributory
1   Negligence.   The presumption indulged in the absence of eye-witnesses is substantive evidence upon which the jury may find want of contributory negligence; at least, the existence of such presumption is quite influential in depriving the court of the right to pass upon such question.

PRINCIPLE APPLIED:   A railway, as it entered the town from the east, curved to the north.   Stock pens just to the east, and a slaughterhouse just to the west, of the railway, were situated 1,500 feet north of the depot.   A lane led north from the slaughter-house 300 feet, to a much used and recognized semi-public crossing. South of this crossing and north of the depot was a public cross-ing.   Deceased, who was employed in connection with the slaugh-terhouse, and familiar with the surroundings, was returning from the slaughterhouse, with a boy 13 years old, and both were killed on the lane crossing, by a train which did not stop at the depot and which was running 45 miles an hour, and was 1½ hours late. The day was cold—about zero; snow covered the ground, and the wind was from the northeast.   Owing to the curve in the track, and to intervening objects, the approach of a train from the east was obscured from one in the vicinity of the crossing.   It was in dispute whether a train, after passing the depot, would be in clear view from the crossing.   The presence of deceased was not seen by the fireman nor by the engineer until instantly before the collision. No living witness saw deceased as he approached and went upon the crossing.   The negligence alleged was (1) failure to give warn-ing signals, (2) excessive speed and (3) failure to maintain proper lookout, as to all of which there was evidence tending to so show. *Held,* the presumption that deceased was in the exercise of due care justified a finding accordingly.

**RAILROADS:** Accident at Crossing—Non-Stopping of Train—Care
2  Required. The conceded right to operate trains through a city
or town without stopping must be exercised with due regard to
those rightfully on or about crossings, even though the crossings
are not strictly public. Evidence reviewed, and *held* to justify a
finding of negligence.

PRINCIPLE APPLIED: See No. 1.

**APPEAL AND ERROR:** Review—Verdict—Sufficiency of Support.
3  In determining whether a verdict has sufficient support in the evi-
dence, the appellate court is bound to give the testimony bearing
on any particular issue the most favorable construction of which
it is fairly susceptible in support of the verdict.

**TRIAL:** Instructions—Requisites and Sufficiency—Quasi Public
4  Crossing. An instruction that a certain quasi public railway
crossing was ''in the nature of a private crossing'' was sufficiently
accurate and wholly non-misleading.

**APPEAL AND ERROR:** Evidence—Exclusion—Immaterial Matter.
5  Error cannot be predicated on the exclusion of evidence which either
(a) calls for matters of general and universal knowledge or (b) is
wholly immaterial.

**APPEAL AND ERROR:** Scope of Review—Questions Failing to
6  Disclose Proposed Evidence. When the form of a question does not
disclose (a) what the answer would have been or (b) whether its
exclusion was prejudicial, counsel must disclose to the court what
fact he desires or expects to prove by the witness, in order to render
the objection to its exclusion reviewable.

PRINCIPLE APPLIED: Deceased was killed, beyond the sta-
tion, by a fast train which passed without stop, through a town,
one of the complaints being failure to keep proper lookout for per-
sons on or near crossings. The fireman testified that, after passing
the station, he first looked up the track and saw no one on the
right of way, and then turned his attention to coaling the engine.
The question excluded and held non-reviewable was, ''What is your
ordinary duty after you pass a public highway or other opening?''
DEEMER, J., dissents as to the application of the rule.

**APPEAL AND ERROR:** Right of Review—Failure of Court to Rule
7  on Motion. No ruling by the court, no reviewable matter. So
*held* on a motion to strike the answer of a witness.

**EVIDENCE:** Documentary Evidence—Expectancy of Life—Standard
8  Life Tables. Standard life tables are competent to show the ex-
pectancy of life.

**TRIAL:** Verdict—Excessiveness—$9,024. Verdict of $9,024 for death sustained. Deceased was 53 years of age, his expectancy was some 16 years, was earning $1,000 a year, was industrious and saving, had accumulated a home and six town lots, several cows, a team and some pigs and poultry, all of which animals were a source of profit to him.

**APPEAL AND ERROR:** Right of Review—Record Not Showing Proceeding—Objectionable Argument. Matters against which objections are leveled *must* be made a part of the record. Improper argument cannot be made of record by counsel's inserting in his objection what he claims opposing counsel said.

*Appeal from Page District Court.*—E. B. WOODRUFF, Judge.

FRIDAY, NOVEMBER 26, 1915.

REHEARING DENIED FRIDAY, APRIL 7, 1916.

ACTION at law to recover damages on account of the death of Andrew P. Johnson. Verdict and judgment for plaintiff, and defendants appeal.

*J. L. Minnis, N. S. Brown,* and *Jennings & Mattox,* for appellants.

*Earl R. Ferguson* and *C. R. Barnes,* for appellee.

WEAVER, J.—The accident in question occurred near the defendant's railway station at the incorporated town of Blanchard, in Page County. While the general course of the railway is east and west, its track curves, as it enters the town from the east, and runs thence substantially due north for a considerable distance. Some 1,500 feet or more north of the station is a stockyard or stock pen, adjacent to the track on the east side. On the opposite side and near the right of way is a slaughterhouse and stock pen. From this house running north about 300 feet, where it turns at a right angle eastward and thence across the tracks, is a lane or road, affording communication between the public street on the east side of the right of way and the slaughterhouse and stockyards. It is graded

up to afford approach to the crossing for teams and vehicles, and the crossings of both main and side tracks are planked for that evident purpose. Across the entrance to this lane on the west side of the track is a gate, but the evidence is sufficient to justify the finding that it was usually left open. The crossing has been maintained in this manner for 10 years or more, and there is evidence to the effect that it was in quite constant use, especially by those having occasion to visit the stockyards and slaughterhouse. The intestate, Johnson, was employed as a butcher and teamster, and in the course of his duties made frequent trips through the lane and over the crossing and was familiar with the surroundings. On January 12, 1912, accompanied by Ralph Johnston, 13 years of age, a son of his employer, he had driven to the slaughterhouse, and on the return trip, both man and boy were struck and killed on the crossing, by the defendant's train moving north. The train in question is known in the record as No. 1, and was due at Blanchard at 7:46 A. M. On this occasion, it was an hour and a half late and moving at a high rate of speed—probably not less than 45 miles an hour. The weather was cold—the mercury standing at or near zero. Snow had fallen to a depth of several inches, and there was some wind from the northeast. Owing to the curve east of the station and intervening obstacles, the approach of a train from that direction would be obscured from a person in the vicinity of the stockyards crossing. Upon the question whether a train after passing the station would, under all the circumstances shown, be in clear view from this crossing, the testimony is not so explicit or undisputed as to render its disposition a matter of law. The appellants' theory is that there must have been a view of the approaching train had the deceased looked after passing the line of telegraph poles about 25 feet from the track. The fireman upon the engine, whose place was upon the west side of the cab, saw nothing of the deceased or the boy until after the collision. The engineer, sitting on the east side, saw nothing except at the very instant of the collision,

when he caught a glimpse of the horses only about four feet
ahead of the engine, according to his estimate, and at once
sought to stop, but ran on about 1,500 feet before bringing his
train to a standstill. No living witness appears to have seen
how deceased approached or entered upon the crossing or what
precaution he took, if any, against being run down by a pass-
ing train. The plaintiff charges the defendant with negli-
gence in failing to sound any signal of the approach of the
train to the Blanchard station; in sounding no signal or alarm
of its approach to the street crossing between the station and
the lane crossing where the deceased was killed; and in oper-
ating the train at a rate of speed which, under the surround-
ing circumstances, was excessive and dangerous, and without
any care to look out for the safety of persons who might law-
fully be upon the crossing. Defendant denies all charges of
negligence, and avers that deceased contributed to his own
death by his own want of care. The issues of fact were found
against the defendant by the jury, and we have to consider
whether any reversible error was committed by the trial court
with reference to the matters argued and submitted upon this
appeal.

I. It is the contention of the appellant that deceased
was chargeable with contributory negligence as a matter of
law. The exception cannot be sustained. The foregoing
statement of facts finds fair support in the
testimony offered in plaintiff's behalf, and we

1. RAILROADS: ac-
cident at cross-
ing: no eyewit-
nesses: con-
tributory negli-
gence.

think it very manifest therefrom that the cir-
cumstances were amply sufficient to carry to
the jury the question whether the deceased
was in the exercise of due care. Indeed, the conceded fact
that no living witness saw him as he approached the track,
or is able to say what precaution he took, if any, or what, if
anything, he omitted to do which he ought to have done, of
itself brings into effect the presumption that he did what the
average reasonable and prudent person would ordinarily do
under the circumstances by which he was surrounded. See

*Dalton v. Chicago, R. I. & P. R. Co.,* 104 Iowa 26, and the numerous cases in which that precedent has been followed. Nor can we argue that the effect of this presumption is rebutted as a matter of law by the other circumstances shown in the record. Even if the deceased, as he turned to the crossing, saw or heard the train as it approached the station a third of a mile away, we cannot say that, as an ordinarily prudent man, he was bound to anticipate that it would, without stopping or moderating its speed, plunge through the yards and over the crossings, rightfully open to the use of the public, in a manner to render hazardous his attempting to cross the track at that time. Indeed, so far as shown, he may have attempted to stop in a place of safety and found himself unable to control his team in the stinging cold of the morning and the excitement occasioned by the sudden approach of the train. True, there is no evidence that this did occur, nor is there any evidence that it did not, but the presumption to which we have referred was sufficient to justify the jury in the inference that he did all that a prudent man could reasonably be expected to do to avoid exposure to sudden and violent death from the train which bore down upon him.

Upon the further question whether there is evidence to support the charge of negligence made against the company, we are satisfied that plaintiff made a case for the jury. While doubtless the company was within its legal rights in

2. RAILROADS: accident at crossing: non-stopping of train: care required.

passing through the town without stopping at the station or at the crossings, it was nevertheless bound to exercise that right with reasonable regard for the safety of the people lawfully using the ways leading across its tracks. There is evidence, as we have before noted, that the train approached and swept through the town and the railroad yard where the accident occurred at a very high rate of speed, and without the usual or other adequate warnings of its approach. That persons rightfully traveling upon the streets and ways might be upon

or approaching the crossings must have been, or at least ought to have been, anticipated by those in charge of the train; but so far as the record shows, it seems to have been disregarded. The fact, too, that neither the fireman nor the engineer discovered the deceased or his team until the very instant of the collision has some tendency to show that they were not maintaining any efficient lookout.

For the purposes of the appeal, this court is bound to give the testimony upon these issues the most favorable construction of which it is fairly susceptible in support of the verdict of the jury, and when this is done, there can be no reasonable doubt that the trial court did not err in refusing to set aside the verdict.

3. APPEAL AND ERROR: review: verdict: sufficiency of support.

II.  The seventh instruction to the jury was to the effect that the burden was upon the plaintiff to prove the alleged negligence of the defendant, and in that connection told the jury that it was conceded that the crossing where the collision took place was not a public crossing, and that the statute requiring the giving of signals at public crossings did not apply thereto; and in so instructing the jury, the court added:

4. TRIAL: instructions: requisites and sufficiency: quasi public crossing.

"The crossing where the accident occurred was in the nature of a private crossing. A railway company is not required to use the same care towards persons using private crossings as it is toward those who are using public ones."

The only criticism made of this language is based upon the use of the words, "in the nature of," when, counsel say, the court should have told the jury unequivocally that it was in fact a private crossing. It is indeed difficult to imagine how the form of expression employed by the court could have prejudiced the defense. The crossing was not a public one in the sense that it was a recognized or legally established highway; and on the other hand, it was something more than a private one, as that phrase is commonly used with reference to crossings furnished by a railway to connect the parts of a farm severed

by a railroad. The charge could not conceivably have misled or confused the jury, and the principle of law stated by the court was distinctly favorable to the defendants, if not more favorable than they were entitled to. The assignment of error thereon is overruled.

III.   Other assigned errors which have been argued by counsel relate wholly to rulings on questions of evidence, and are as follows:   The fireman having testified that, after passing the station at Blanchard, he turned

5. APPEAL AND ERROR: evidence: exclusion: immaterial matter.

his attention to the work of coaling the engine, but before doing so, he looked up the track and satisfied himself that there was nothing on the right of way, counsel for appellant asked, ''What do you say as to that being your duty?'' and answer thereto was excluded upon plaintiff's objection. The correctness of the ruling is too clear for argument. If the question had reference to the witness's act in coaling his engine, it was a matter of common knowledge, as well known to the jury as to the witness, that the firing of his engine is the duty of a fireman. If it related to his act in looking forward, then it was not material; for he testified that he did look before coaling the engine. If any other fact was in the mind of counsel, it was not revealed to the court, and the exclusion of the answer was therefore not erroneous.

This ruling was immediately followed by the inquiry, ''What is your ordinary duty after you pass a public highway or other opening?'' and upon objection's being sustained, it was repeated quite persistently, with a little variation in form, and the answer was

6. APPEAL AND ERROR: scope of review: questions failing to disclose proposed evidence.

excluded. It is enough to say in this connection that counsel did not disclose to the court what fact he desired or expected to prove by the witness, and this court cannot say, from the form of the question, what the answer would have been, or whether its exclusion was prejudicial.

Several objections were made and exceptions taken to

inquiries to witnesses as to what they had observed of deceased
in his manner of using the crossing. Counsel concede the pro-
priety ordinarily of this kind of testimony as tending to
strengthen the presumption of due care on part of deceased
where there is no eyewitness of his conduct at the time; but
say that in this case it should have been excluded, because the
proved physical facts show conclusively that he could not have
exercised reasonable care. This objection is fully covered by
what we have said in the preceding paragraph, and it need
not be repeated here. The case made by the plaintiff was,
as we have seen, sufficient to entitle her to go to the jury.

In another instance complained of by appellants, they
moved to strike an answer which they deemed objectionable,
but the record shows no ruling thereon. As there was no
ruling, there was, of course, no error. Had
defendants desired a sufficient record thereon,
they should have called the omission to the
attention of the court and obtained a ruling,
or at least a record of a distinct refusal to rule.

7. APPEAL AND
ERROR: right of
review: failure
of court to rule
on motion.

The court permitted the plaintiff to introduce in evidence
the standard life tables to show the expectancy of life of her
intestate, and to this exception was taken—not to the method
of the proof, but to the competency of the
fact. The competency in such cases of evi-
dence of this nature has been too long and
too universally approved to be open to argu-
ment or to make it proper for us to extend this opinion for
the citation or review of the precedents. But counsel say
that the evidence as offered had the effect to impress the
jurors with the thought that the proof was admitted to show
that the earning capacity of the deceased would have con-
tinued unabated to the full end of his expectancy. Nothing
of that kind is suggested in the record, and we cannot presume
that any such unreasonable theory was indulged in by the
jury.

8. EVIDENCE: doc-
umentary evi-
dence: expec-
tancy of life:
standard life
tables.

It is finally argued that the verdict is excessive. The

damages assessed were $9,024. The deceased was 53 years old, and his expectancy of life was between 16 and 17 years.

9. TRIAL: verdict: excessiveness: $9,024.

He was earning about $1,000 a year, and appears to have been industrious and frugal. He had acquired a home and six town lots, the value of which is not shown. He owned a team, several cows, pigs and poultry, which were a source of profit to him. The estimate of damages or the value of a man's life to his estate is left largely to the discretion of the jury. The court can give to the jury no rule by which such sum can be determined to a mathematical certainty, and, if the award be not so great as to make it clear that the verdict is the result of passion or prejudice or of a palpable disregard of the evidence or of the law as given in the instructions, it is not within the proper province of the court to interfere with it. The record before us does not present such a case.

Finally we are asked to reverse the judgment because of alleged misconduct of plaintiff's counsel in argument to the jury. It is said that counsel improperly worked upon the sympathy of the jury by comparing the value of human life with that of fancy bulldogs, fine horses and valuable hogs, for injury to which, when shipped as freight, the defendant would be liable. Whether this kind of argument would justify the setting aside of a verdict, or would justify this court in holding that the trial court erred in refusing to set it aside on such ground, we need not here decide; for we find no proper record that plaintiff's counsel did so offend. The abstract shows the following, and nothing more:

10. APPEAL AND ERROR: right of review: record not showing proceeding: objectionable argument.

"Mr. Ferguson closed for the plaintiff. In his closing argument, the court being absent from the room, defendants asked for return of the court and reporter, and made the following objections to remarks of counsel in closing argument."

Following these words, defendants' counsel undertook to repeat as part of his objection certain language which he said

was used by Mr. Ferguson in addressing the jury. The objection being made, the court remarked, "The court will give the jury the law of the case instead of Mr. Ferguson." The argument objected to does not appear to have been taken down by the reporter when delivered, and there appears to have been no attempt to make it part of the record. That end is not to be attained by the mere declaration of opposing coun-sel in the course of stating an objection to the court.

Most of the other assignments of error have not been argued, and, so far as the remaining points made have been mentioned in argument, but not referred to in the opinion, we think that they are without merit.

We find no sufficient ground for setting aside the judgment below, and it is—*Affirmed.*

EVANS, C. J., and PRESTON, J., concur.

DEEMER, J. (specially concurring).—I think that the question propounded to the fireman, treated by the majority in the third division of the opinion, should be considered on its merits, and not put aside because we cannot say what the answer of the witness would have been. Surely counsel should not be permitted to ask a leading question suggesting to both the court and witness what the answer would be, and, if it sufficiently appears what the purpose of the question was, this should be held sufficient. It is perfectly manifest from the questions put to the witness that the defendants were trying to prove by this witness that the fireman on the engine, after passing the depot or station in Blanchard and after looking up the track, proceeded to coal the engine and to otherwise attend to it, thereby leaving his station when he should have been on the lookout for people on the track, and that in so doing he was simply doing his duty to his employer, and therefore was not negligent in temporarily leaving his seat. He was asked, "What do you say as to that being your duty?" and "What is your ordinary duty after you pass a public highway or other opening?" To my mind it is apparent what the purpose of these questions was and just as clear that the

answer was to be in justification of his conduct in leaving his station to coal and attend to his engine; quite as clear as if counsel had stated what he expected to prove by the witness. Counsel could not have done more than say: ''This witness has testified that, after passing the station of Blanchard and looking up the track, he turned his attention to coaling and caring for his engine; now we want to prove that this was his duty and that what he did was in the proper performance of his duty to his employer.'' This would amount to nothing more than what the record already disclosed. Counsel for appellee make no such points, which are considered by the majority insufficient to justify a review of the rulings in question, doubtless for the reason that they thought that there was no merit in them. I think that all the propositions referred to by me in this concurrence should be squarely met; that they are in the record for decision, and that the manner of their treatment induces confusion into our practice which should be avoided. I am of the opinion, however, that plaintiff made out a case for a jury and that the rulings on testimony were correct; the latter for the reason that, no matter what the fireman's duty to his employer, he also owed a duty to persons who might be at or near public or private crossings, and that it was for the jury to say which was primary; and that in any event, having testified as to what he was doing after leaving the station and looking up the track, it was for the jury to say whether he was negligent in stepping aside to coal his engine. I register this concurrence so as not to be bound by the other propositions laid down by the majority.