GEORGE B. JOHNSTON, Appellant, v. ROBERT McFERREN et ux., Appellees.

No. 45899.

█ 

APRIL 7, 1942.

REHEARING DENIED SEPTEMBER 25, 1942.

 █ 

R. G. Remley and L. R. Kayser, both of Webster City, for appellant.

David B. Evans and F. J. Lund, both of Webster City, for appellees.

GARFIELD, J.—On February 27, 1920, appellant Johnston became the owner of Lot 12, Block 105, Dubuque & Pacific Railroad Addition to Webster City, together with the south half of the vacated alley running east and west adjacent to the north end of said lot. North of Lot 12 is Lot 11. The official plat shows Lots 11 and 12 each 92 feet north and south by 66 feet east and west. Between the two lots is the vacated alley above referred to, which is 16½ feet wide. On February 26, 1940, appellees McFerren, who are husband and wife, contracted to purchase from the then owners, named France, the south 42 feet of Lot 11, together with the north half of the vacated alley adjoining said Lot 11 on the south. While the deed from the Frances to the McFerrens, dated March 20, 1940, recites that it covers the north half of the vacated alley, it refers to it as 8 feet wide, rather than 8¼ feet, half the true width of the alley. The McFerrens bought this parcel for $600 for the purpose of erecting a home thereon. The home was built during the spring and summer of 1940 at a cost of $5,600. The boundary line in dispute is between appellant Johnston on the south and appellees McFerren on the north.

Lot 12, the Johnston property, was purchased in 1881 from the then owner by Mary J. Simons. On September 12, 1901, Mrs. Simons acquired from the city a deed to the south half of the vacated alley adjacent to Lot 12. Mrs. Simons sold Lot 12 and the south half of the vacated alley to one Buell in 1917, who in turn sold to appellant in 1920. It is appellant's claim, and testimony of Mrs. Daniels, a daughter of Mrs. Simons, tends to show, that soon after receiving the deed from the city to half the vacated alley, Mrs. Simons caused her newly acquired north line to be surveyed by one Fox, and built a wooden fence on the line so surveyed. It is the line of this fence which appellant seeks to have established, on the theories of acquiescence and adverse possession. The petition alleges that the McFerrens attempted to deprive appellant of a strip $3\frac{1}{4}$ feet wide south of the fence line.

In 1896 or 1897, before this fence was built and before Mrs. Simons acquired half the alley, a shed for fuel had been built by Mrs. Simons. The shed is about 12 feet east and west and about 6 feet north and south. The west end of the shed is about 12 feet east of the west line of Lot 12. The fence was built a few feet—the exact distance being in dispute—north of the shed. The fence was pretty well dilapidated when appellant purchased Lot 12 in 1920, and had largely disappeared not later than 1925. Appellant claims, however, that the stumps of some of the posts were still in place when appellees excavated for their new home.

About March 23, 1940, soon after appellees purchased their parcel of ground, they caused a survey to be made by Surveyor Little, who found that the true boundary line was approximately 2 feet south of the north side of the shed. This is the line for which appellees contend and which the trial court established in its decree. Appellees claim that appellant acquiesced in the Little survey and orally agreed to move the shed to the south so that it would not encroach upon appellees. They also claim that their house was laid out and constructed in reliance upon appellant's acquiescence in the Little survey and his agreement to move the shed. The McFerren house faces east, as does the Johnston house. The McFerren garage is attached to the north end of the house. There are approximately 2 feet between the

north side of the garage and the north line of the McFerren parcel of ground, and about 4 feet between the south side of appellees' new house and the line of the Little survey. It is thus apparent that the house and garage occupy substantially the full width of the McFerren parcel of ground. The space between the north side of appellant's home and the Little line is about 17 feet, although there is a rear porch on the northwest corner of the house, the north side of which is but about 11 feet south of the Little line.

Appellant, according to appellees, had agreed that the shed would be moved on or before Decoration Day, 1940, so that it would stand south of the Little line. Appellant did not move the shed, however, and at least eventually refused to abide by the Little survey. On the night of August 4, 1940, appellees organized what appellant, with some justification, refers to as a mob, which, by working practically all night, forcibly moved the shed to the south about 2 feet. They then planted steel bars set in concrete behind the shed so that it could not be moved again to the north. Appellees testified that their attorneys advised them to take the law into their own hands and move the shed in this manner. The advice should not have been given. There is enough lawlessness without attorneys giving their clients such advice.

As heretofore stated, Lots 11 and 12 were each 92 feet long, according to the official plat. Surveyor Little testified, however, that the actual length of the two lots, by measurement, plus the width of the alley (which is 16½ feet), was 203 feet. The measured distance, therefore, exceeds the distance shown on the plat by 2½ feet. Measurements taken by Surveyor Currie were substantially the same as those taken by Little. The Little survey divides this "overrun" of 2½ feet equally between Lots 11 and 12, leaving each lot 93¼ feet long, rather than 92 feet. This, together with the 8¼ feet, the width of the south half of the alley, leaves appellant's ground 101½ feet long. Both Currie and Little testified that this method of dividing the overrun between the two lots accords with the usual practice of surveyors. This court has, in effect, so recognized such practice as far back as 1855. Moreland v. Page, 2 (Clarke) Iowa 139, 153.

The Little survey closely corresponds to a survey made in

1916 by Currie, when he located the center of the vacated alley north of the northwest corner of Lot 12 and there placed an iron stake. Currie first testified that the stake was placed at the northwest corner of the lot but later said the marker was placed in the center of the alley. Currie also testified that his survey corresponds to that made by Fox, whom the former owner, Mrs. Simons, employed about 1901. There is little doubt that the boundary established by the trial court is substantially the true line according to survey.

Appellant relies upon the rule, repeatedly followed in this state, that a line marking the boundary between adjoining owners, which is recognized and acquiesced in as such for a period of at least 10 years, becomes the true boundary, notwithstanding it is not the line fixed by survey. Sieck v. Anderson, 231 Iowa 490, 497, 1 N. W. 2d 647, 650, and cases cited; Thompson v. Schappert, 229 Iowa 360, 294 N. W. 580, and cases cited; Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038. For the distinction between acquiescence and adverse possession, see Patrick v. Cheney, 226 Iowa 853, 285 N. W. 184.

There is much to support the conclusion that at the time appellant purchased his property in 1920, the fence in question had become by acquiescence the boundary between it and the France property, the south part of which was purchased by appellees in 1940. However, the fence practically disappeared about 15 years before appellees bought their ground and there was little, if any, evidence of its existence in 1940. There is no showing that when appellees acquired this ground they had actual or constructive notice that the line where the fence formerly stood marked the boundary. Furthermore, the actual location of the fence has become uncertain. Were it to be established as the boundary it would be necessary to resort to some conjecture and speculation to locate the line. While appellant alleges in his petition that appellees seek to deprive him of 3¼ feet of his property, his witness Mrs. Daniels testified at one time that the fence was built about 8½ feet north of the shed and was in that location when her mother sold to Buell in 1917. This testimony would place the fence some 10 feet north of the Little line.

It may seem strange, however, that appellant can be de-

prived of about 2 feet of the ground upon which the shed stood for some 43 years as an appurtenance to the property. This brings us to appellees' contention that appellant acquiesced in the Little survey, that appellees improved their property in reliance thereon, and therefore appellant is estopped from asserting his claim.

There is little doubt that appellant learned of the sale from France to appellees at about the time it was made and knew that appellees planned to build on the ground. Mrs. McFerren testified that she told appellant before the house was laid out she was going to be his neighbor. While appellant denied this, he admitted he knew that appellees were talking of building on this location. Raymond France testified that he showed appellant the stakes put in by Little between the two properties the evening after the survey was made and told him he had sold to McFerrens, who were going to build a house.

"Mr. Johnston saw the survey and mentioned that his shed evidently was over on the other side and he might have to move it * * *. He didn't make any complaint about having to move it. * * * A few days afterwards * * * he said he thought he would have to move it * * * ."

McFerren testified that appellant was present when the location of the house was being determined; that the Little stakes were visible; that appellant said:

"He [the contractor] won't make me move the shed now, it is froze down and if you will wait until the snow and ice go off the north side I will move it then."

The contractor gave substantially the same testimony. Thereupon it was agreed that the shed might stand until the ice went off the north side. Appellant appeared to be pleased that the shed could be moved later when the frost went out. Mrs. McFerren testified:

"Mr. Johnston told me about the shed being on our ground and he had promised my husband he would move it if we would be patient and waited until the ice went off * * * ."

It appears without dispute that the house was located and

excavation commenced at least within a few days after the claimed promise of appellant to move his shed. Appellant watched the construction. Both appellees testified that appellant definitely promised to move the shed on Decoration Day, when he would have a day off from his regular work. It was not until after Decoration Day that Mr. Johnston declined to abide by the Little survey and said he had found out he did not have to move the shed.

While appellant did not admit that he consented to the Little survey, he did testify that he promised McFerren and the contractor to move his shed "if it was on them." To the question on cross-examination, "Didn't you mention you would move it several times before Decoration Day?" appellant answered, "I don't remember." It is true there is evidence that appellant expressed to Little and the contractor, Maxon, some dissatisfaction with the line fixed by the survey. He claimed to Maxon and McCoskey, who did the excavating, that the true boundary was in line with some telephone poles. These witnesses testified, however, that the Little survey was within a few inches of the line of these poles. But appellant did not go to appellees and seek to withdraw his promise to move the shed, nor his recognition of the Little survey, upon which appellees had acted. Several witnesses, including Raymond France, testified that appellant did not claim the line of the old fence as the boundary until about August 1st. Indeed, McFerren testified that appellant never made such a claim to him, and he first learned of the fence as the claimed boundary when he saw the petition which was filed in court.

There is other testimony tending to show that appellant acquiesced in the Little survey. He constructed a concrete driveway which conformed to the survey, leading from the paved street at the north end of his parking. Appellees repaired the sidewalk and graded their lawn to the line claimed by them without objection from appellant.

McFerren testified that he would not have built the house where he did had he known appellant would dispute the Little line. The contractor testified, in substance, that he would not have located the house as he did if he had anticipated the boundary controversy.

312

■ We think appellant is estopped from questioning the line established by the trial court. This court has held that an oral agreement to accept a survey is conclusive, when followed by possession and improvement of the property in reference to the new line, with the acquiescence of the parties. Kitchen v. Chantland, 130 Iowa 618, 623, 624, 105 N. W. 367; Cheshire v. McCoy & Henry, 205 Iowa 474, 218 N. W. 329. This case falls within the rule of the cited decisions. It fairly appears that prior to the Little survey appellant was in some doubt as to the boundary. He recognized the line established by that survey and at least impliedly agreed to be bound thereby. He saw appellees improve their property at an expense of $5,600, in reliance on the survey, without objection on his part. It would be inequitable to permit appellant to change his position under the circumstances here.

Appellant cites on this branch of the case, Bradley v. Burkhart, 139 Iowa 323, 115 N. W. 597, 130 Am. St. Rep. 328; Fredricksen v. Bierent, 154 Iowa 34, 134 N. W. 432; Savage v. Armstrong, 156 Iowa 473, 137 N. W. 474; Brewer v. Claypool, 223 Iowa 1235, 275 N. W. 34. These decisions are in no way inconsistent with our conclusion but are plainly distinguishable on the facts.

■ Appellant contends there was no proper pleading of the defense of estoppel. Appellees' answer alleges that *if* there was ever any uncertainty concerning the true boundary, it was definitely settled by survey, agreement, acquiescence, and improvement of their properties as follows: This allegation is followed by two and one-half pages regarding the Little survey; appellant's consent thereto; his agreement to move the shed; appellees' improvement of their property in reliance thereon, etc. Appellant moved to strike this portion of the answer because it was ''conditional and hypothetical'' by reason of the allegation, ''If there was ever any uncertainty,'' etc. Appellant cites, in support of his contention, 49 C. J. 293, section 358, Ibid., 90, section 87; and Simons v. Petersberger, 171 Iowa 564, 570, 151 N. W. 392, 394, in which this court held it is not allowable ''to qualify the denial or affirmation of an issuable fact by an 'if'.''

So far as the record shows, appellant never submitted his

motion to the court nor asked for a ruling thereon. The court did not rule on the motion. Appellant consented to go to trial and the matters covered by the allegations of the answer were fully covered by the evidence. Under these circumstances appellant cannot now complain that his motion was not sustained. Albright v. Winey, 226 Iowa 222, 225, 284 N. W. 86; Grafton v. Delano, 175 Iowa 483, 491, 154 N. W. 1009; Hay v. Hassett, 174 Iowa 601, 606, 156 N. W. 734; State Sav. Bk. v. Miller, 146 Iowa 83, 87, 124 N. W. 873; 49 C. J. 855, section 1261.

Appellees' motion to strike appellant's reply brief is overruled. The decree is—Affirmed.

All JUSTICES concur.