BETTY L. LORENZEN, REGULAR ADMINISTRATRIX OF THE ESTATE OF JOHN C. LORENZEN, DECEASED, APPELLEE, V. CONTINENTAL BAKING COMPANY, A CORPORATION, APPELLANT, IMPLEADED WITH PETER PAN BAKERS, INC., A CORPORATION, APPELLEE.

141 N. W. 2d 163

Filed March 25, 1966. No. 36129.

24

Stoehr, Rickerson & Caporale, for appellant.

Eisenstatt, Lay, Higgins & Miller and Moyer & Moyer, for appellee Lorenzen.

Cassem, Tierney, Adams & Henatsch, for appellee Peter Pan Bakers, Inc.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, and McCOWN, JJ., and KOKJER, District Judge.

CARTER, J.

This is an action to recover for the wrongful death of John C. Lorenzen, plaintiff's decedent, alleged to have

been caused by the negligence of the Continental Baking Company. The jury returned a verdict for the plaintiff in the amount of $85,368, and Continental has appealed.

On June 21, 1963, plaintiff's deceased was employed by Peter Pan Bakers, Inc., as a truck route driver on a regular bread route. He left Omaha early in the morning of that day and had traveled about 5 miles east of Council Bluffs, Iowa, when his truck was in a collision with a tractor-trailer belonging to Continental and operated by William Vincent. Both drivers were killed instantly. Each driver was alone in his vehicle. There were no eyewitnesses to the accident. The evidence as to the cause of the accident comes from those who appeared on the scene immediately after the accident, expert witnesses, and the surrounding circumstances. Continental contends that the evidence is insufficient to support a judgment, and even if sufficient, the judgment is excessive.

The accident occurred on U. S. Highway No. 6 about 5 miles east of Council Bluffs, within the State of Iowa. Immediately prior to the accident the Peter Pan truck was traveling in a northeasterly direction. It was approaching an elbow bend in the road, the road turning to the right on an elbow turn as it proceeded on its way from Council Bluffs to Oakland, Iowa. The Continental tractor-trailer, immediately prior to the accident, was approaching the bend or curve from the opposite direction. The accident occurred after the Continental tractor-trailer had turned the curve.

The road was paved for a width of 18 feet. The center of the road was marked with a broken white line. It was raining at the time of the accident, the pavement was wet, and the shoulders were soft. Visibility was limited to one-half to three-quarters of a mile. The road was level in the area of the accident, although the road was hilly and winding in the general area through which it passed. The Peter Pan truck was completely wrecked

and was .7 feet or more off its right-hand side of the road after the collision. The Continental tractor-trailer was 168 feet beyond the Peter Pan truck when it came to a stop after the accident. The 40-foot trailer was crosswise on the road completely blocking it. The tractor and trailer were in a jackknifed position, the tractor being at the side of the trailer farthest from the point of collision. The weight of the Continental tractor-trailer and load at the time of the accident was 28,212 pounds. The Peter Pan truck and load weighed approximately 7,350 pounds.

There is no evidence of the speed of the Peter Pan truck, nor any direct evidence that it was not traveling on the right-hand side of the road. The presumption necessarily is that it was being operated in accordance with the rules of the road and free from negligence on the part of its driver. The same presumption exists as to the driving of the Continental tractor-trailer and its driver. The burden of proof is upon the plaintiff to prove negligence by a preponderance of the evidence.

It is not disputed that the speed limit for the two vehicles at the place of the accident was 50 miles per hour, day or night. The Continental tractor was equipped with a tachometer which showed its speed at the time of the accident to have been 56 to 57 miles per hour.

The driver of the Continental tractor-trailer was William Vincent. He was 21 years of age. This met with the age requirements of the Interstate Commerce Commission for driving this type of vehicle. The Continental Baking Company, however, had a company rule that its over-the-road drivers of this type of vehicle should be at least 25 years of age. The plaintiff makes a point of the fact that the garage supervisor for Continental, who was the hiring agent for Continental, was Vincent's father-in-law and that the waiver of the company rule as to age is evidence of negligence by the company. We think not. The waiver of a company rule is not in the same category as a violation of statutes or regulations of a

governmental agency. While the age of a driver is a circumstance that may be considered, it is not, under such circumstances, in itself evidence of negligence.

Each of the parties called an expert witness who qualified as an expert in the general area of collision analysis. Prof. W. F. Weiland testified that he went to the scene of the accident between 12 and 1 o'clock p.m. on the day of the accident and examined the premises. Pictures of the vehicles were taken by the patrolman at the scene of the accident, and Prof. Weiland also took many pictures of the Continental tractor-trailer after it had been removed from the scene of the accident. From an examination of the scene of the accident, and all of the pictures offered in evidence, he concluded that the accident was a head-on collision between the left front ends of the two vehicles and, from an analysis of the damage thereto, that the Peter Pan truck was necessarily encroaching on its left-hand lane at the time of the collision.

Dr. William H. Tonn, Jr., was called by the plaintiff. He examined all the photographs that were offered in evidence. His testimony is that there was no head-on collision as indicated by the front ends of the two vehicles. He pointed out that the horns on the frame of the Peter Pan truck were in such condition as to indicate no head-on collision. The radiator core, he says, would have been smashed in if such collision occurred, and that, in fact, it was not damaged. He concluded that all the evidence indicates that the force applied to the Peter Pan truck which pushed it off the highway, was from the side. His final conclusion was that the Continental tractor-trailer was jackknifing immediately before the collision; that the Continental vehicle struck the left side of the Peter Pan truck, stopping its forward motion, and that the momentum of the heavier Continental rig pushed the Peter Pan truck off the road and against the embankment; and that the Continental rig continued in a jackknifed position and came to rest as previously described. It is evident that the jury ac-

`cepted the opinion evidence of Dr. Tonn and rejected that of Prof. Weiland.

There is much evidence in the record on the issue as to whether or not the air hose controlling the brakes on the trailer of the Continental rig were connected and operating prior to the accident. Admittedly they were disconnected after the accident. There is evidence that they were hanging down immediately after the accident and at a later time were found wrapped around an air intake pipe or an exhaust pipe on the tractor. We do not think the evidence on this issue supports the contention of the plaintiff. There is also evidence in the record that the wheels of the trailer were free and not braked as they would be in case of an emergency break in the hose line. There is conflicting evidence to the effect that the wrecker could not move the trailer and that the. emergency air tank had to be bled before the trailer could be moved. In fact, in one of the pictures taken by the highway patrolman, one of the wrecker operators was shown on the ground under the trailer in front of the rear dual tires, where the petcock, used in bleeding the air to release the brakes, was located. The evidence is in conflict as to whether or not the trailer wheels were free after the accident.

Summarizing the evidence in this case the jury could find as follows: The Continental tractor-trailer was being driven by Vincent immediately before the accident at a speed of 56 to 57 miles per hour on a highway where the speed limit for the vehicle was 50 miles per hour. The weather conditions were adverse and the pavement was wet and slippery. Vincent was driving in the outside lane on a rather pronounced curve. After completing the curve he either changed the direction of his tractor or failed to brake his trailer in time to prevent a jackknifing of his rig. The jury could also find that the brakes of the trailer were not operating properly. The jury could well believe the expert evidence of Dr. Tonn that the jackknifing occurred before the collision and

was the cause of it. Such evidence, if believed, affirmatively shows that it, and not any contributory negligence of plaintiff's decedent, was the proximate cause of the accident. We conclude that the whole of the evidence is sufficient to sustain the inference drawn by the jury that the negligence of Vincent was the proximate cause of the death of John C. Lorenzen. We find no error in the action of the trial court in submitting the case to the jury.

Continental assigns as error the giving of instruction No. 2 in that it submitted issues not sustained by evidence. The instruction submitted the issues, among others, as to whether or not the driver of the Continental tractor-trailer had reasonable control of the rig immediately previous to the collision and whether or not he was keeping a proper lookout. Under all the facts and circumstances of this case, even though there is no direct evidence on the issues, the question of proper control and lookout was for the jury. If the Peter Pan truck was being operated on its right-hand side of the road, the accident was necessarily caused by a failure to control the Continental tractor-trailer, or by the failure of its driver to see and avoid striking the Peter Pan truck. Although the evidence was largely circumstantial, it was sufficient to submit the issues about which complaint is made. The trial court did not err in submitting instruction No. 2.

Continental assigns as error the excessiveness of the verdict and judgment. As to damages, the evidence is substantially as follows: The deceased, John C. Lorenzen, was 28 years of age with a life expectancy of 43 years. He was married to Betty L. Lorenzen on June 6, 1954, and at the time of his death they were the parents of two sons, Larry Lee and Gary Gene, aged 9 and 4 years at time of trial. The deceased was a high school graduate and had attended college for two summers. He taught country school two years. He subsequently worked as an apprentice telegrapher at a salary of $40

per week. Later he worked for a chain store at a salary of $50 per week. He then worked for a construction company for which he was also paid $50 per week. In 1958 he was employed as a relief route driver for Peter Pan Bakers, Inc., and in 1960 moved to Omaha where he continued in its employ as a route bread-truck driver until his death. That he was an energetic and faithful employee is shown by the evidence. He was reliable in his work and was highly regarded by his employer. He had no bad habits, had the confidence of his route customers, and had the ability to get along well with his employer and its customers. He was in line for promotion with an increase in pay at the time of his fatal accident, a matter which will be hereafter discussed.

At the time of his decease he was renting a home in Omaha. He owned a 1960 model Falcon automobile, bought in June 1962, which was mortgaged for $400. He had purchased and paid for furniture in the amount of $1,200. At the time of his death he had a bank account of approximately $1,300. He had a $5,000 policy of life insurance, the premiums on which were paid for by withholdings from his pay. He had no stocks, bonds, or other investments. He did not own his own home. He was frugal and kept his bills paid up. He had been able to accumulate small savings only since his employment with Peter Pan Bakers, Inc.

He was employed on a salary plus a percentage on sales over a fixed amount. The evidence shows that the deceased earned a gross salary of $7,085.19 in 1961, $7,109.03 in 1962, and $3,660.86 from January to June 1963. There is evidence that deceased was to take a new city route a few days after his death. This route earned a gross salary of $7,790.30 in 1963 and $8,665.46 in 1964. The federal income tax of deceased indicated earnings of $6,247.31 in 1960, $6,155.83 in 1961, $6,169.22 in 1962, and $3,171.46 from January 1, 1963, to the date of his death on June 21, 1963. There is no evidence of the amounts remaining after living costs were deducted.

This constitutes the sole evidence of the earning capacity of the deceased.

The accident occurred in Iowa and the rule of damages is therefore determined from the law of Iowa. Restatement, Conflict of Laws, § 391, Comment d, p. 480. See, also, Restatement, Conflict of Laws, § 412, p. 493.

Liability for a negligent death did not exist at common law. Liability for such a death was legislatively created in England by the enactment of Lord Campbell's Act in 1846. Similar legislation for wrongful death in this country soon followed in most of the states. In Iowa, however, the wrongful death statute contained many differences from the usual Lord Campbell's Act wrongful death statutes enacted by most of the states. While the Iowa statute had the same remedial purpose, it differs in its provisions, its theory, and its application. It is necessary that we note the differences in the Iowa wrongful death statute since it is so different from our own.

Under the law of Iowa the measure of damage for wrongful death is the loss resulting to the estate of the deceased. It is a survival statute, not an ordinary Lord Campbell's Act wrongful death statute by which damages may be awarded to beneficiaries for the loss sustained. Under the Iowa survival statute the recovery is for such damages as deceased himself might have recovered had he survived the injury and brought the action, enlarged to include the wrongful death. Fitzgerald v. Hale, 247 Iowa 1194, 78 N. W. 2d 509. In other words, the measure of damages in a wrongful death case in Iowa is the present worth or value of that which the decedent would reasonably be expected to save and accumulate as a result of his efforts if he had lived out the usual time of his life, to which may be added interest on reasonable funeral expense for such time as it was prematurely incurred. Brophy v. Iowa-Illinois Gas & Electric Co., 254 Iowa 895, 119 N. W. 2d 865 (1963); Cardamon v. Iowa Lutheran Hospital, 256 Iowa 506, 128

N. W. 2d 226 (1964). It is evident that under the Iowa law, in a wrongful death case, the loss of the ability of the deceased to earn and accumulate money or property is the important element in the measure of damage. Cardamon v. Iowa Lutheran Hospital, *supra*. Reduced to the ultimate in simplicity of statement, the measure of damage is the amount of money and property which the deceased would reasonably have accumulated in his lifetime but for his wrongful death, reduced to its present worth.

The evidence in this case shows that the largest amount of compensation the deceased Lorenzen earned or would have earned is $8,665.46 in 1964. The amount of this compensation that would have been saved and accumulated by him is not shown, but it does appear that from June 6, 1954, to the date of his death on June 21, 1963, it was about $1,300. It is true that he had purchased furniture and a second-hand automobile which would depreciate out of existence and require replacement. We point out also that the maintenance and schooling of the two small boys would increase until they became self-sustaining. After this period his savings would in all likelihood be increased. Without any evidence of his cost of living expenses, uncertainty exists as to the amount the deceased would have saved or accumulated over the years.

The judgment in this case was for $85,368, which represents the present worth of the amount the jury found that the deceased would have saved and accumulated during his expectancy but for his premature death. Assuming that the present worth was determined on a 4½ percent earning rate of interest, the jury would have to find that deceased would have saved and accumulated $250,138.24 to produce a present worth of $85,368. If the present worth was determined by a 4 percent earning rate, the jury would have to find that deceased would have saved $232,190.96. If the deceased saved $2,000 per year, he would have saved and accumulated $86,000 in

43 years, $129,000 if he saved and accumulated $3,000 per year, and $172,000 in 43 years at $4,000 saving per year. The amount shown to have been saved and accumulated during the 5 years previous to his death does not even approach these figures.

It is true that the measure of damages under Iowa law is speculative in nature. It is true also that the damages in a death case is left to the jury to determine. But the amount fixed must bear some reasonable relation to the maximum amount shown by the evidence. We submit that the amounts of $250,138.24 or $232,190.96 as the savings and accumulations of deceased during his 43-year expectancy are not supported by the evidence. Nor does the evidence sustain any amount, which reduced to present worth, would produce $85,368, the amount of the judgment in this case. Nor would the interest on the premature burial expenses, reduced to present worth, make any substantial difference.

Plaintiff argues in her brief that the purchasing power of money should be considered in determining if a judgment is excessive. This is ordinarily true, but in the instant case the purchasing power of money is likewise reflected in the earnings of the deceased. Hackman v. Beckwith, 245 Iowa 791, 64 N. W. 2d 275. Although there may be some lag between the purchasing power of money as it relates to living costs and that represented in wages and salaries, it does not play too great a part under such a rule as exists in Iowa. Plaintiff also points out that much larger judgments are sustained in other states which is, of course, true. But we point out that in those states the recoverable damages in a wrongful death action are compensatory, and often punitive as well, while in Iowa they are neither compensatory nor punitive.

The Iowa court has said that it is not permitted for the court to substitute its judgment for that of the jury except with extreme caution. Mazur v. Grantham, 255 Iowa 1292, 125 N. W. 2d 807. A verdict cannot be char-

acterized as being excessive unless the record on appeal affirmatively shows it to be a fact or shows an apparent disregard of the law as given by the court's instructions. Grafton v. Delano, 175 Iowa 483, 154 N. W. 1009; De-Toskey v. Ruan Transport Corp., 241 Iowa 45, 40 N. W. 2d 4, 17 A. L. R. 2d 826.

We point out that it is a very difficult matter to determine the compensatory loss of a young husband and father to his family. In one sense of the word there is no way of making adequate compensation. The question necessarily becomes a matter of policy in the state where the tort occurs. The State of Iowa has adopted a policy in which compensatory damages play no part. The damages there allowed are for the loss to the estate of the deceased; what he would have had in his estate if he had lived out his expectancy. Giving the evidence its most favorable interpretation, it will not support a verdict that the deceased would have saved such an amount, reduced to its present worth, that would sustain the verdict of $85,368. While it is the province of the jury to fix the amount of a verdict in a wrongful death case, the verdict fixed must be within the scope of the evidence offered. Soreide v. Vilas & Co., 247 Iowa 1139, 78 N. W. 2d 41; Sisson v. Weathermon, 252 Iowa 786, 108 N. W. 2d 585; Brophy v. Iowa-Illinois Gas & Electric Co., *supra*.

We conclude that plaintiff is entitled to keep the verdict of the jury finding in effect that Continental was liable to the plaintiff for negligence. The verdict for $85,368 is set aside as excessive, and the judgment is reversed and the cause remanded to the district court for retrial as to damages only.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.