LARRY A. HADENFELDT EL AL., APPELLANTS AND CROSS-APPELLEES, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, APPELLEE AND CROSS-APPELLANT.

239 N. W. 2d 499

Filed March 11, 1976. No. 40236.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, and Brian K. Ridenour, for appellants.

Ray C. Simmons, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This is an action by Larry A. Hadenfeldt and Allen Hadenfeldt to recover the amount of judgments in excess of the limits of an automobile liability insurance policy issued to the plaintiffs by the defendant, State Farm Mutual Automobile Insurance Company. The jury returned a verdict for the defendant and the plaintiffs have appealed. They contend they were entitled to judgment as a matter of law.

In determining whether the evidence in this case is sufficient to sustain the judgment the evidence must be

considered in the light most favorable to the defendant, every controverted fact must be resolved in its favor, and it is entitled to the benefit of every reasonable inference that may be drawn therefrom.

The controversy involved in this case arises out of an accident that occurred on November 13, 1970, involving an automobile owned by the plaintiffs and being operated by Larry A. Hadenfeldt. The Hadenfeldt automobile collided with the rear of an automobile operated by Vernon Hunzeker which in turn collided with an automobile proceeding in the opposite direction and being operated by Mrs. Betty Maser. Mrs. Maser sustained very severe injuries as a result of the accident and recovered a judgment against the plaintiffs in the amount of $72,500. George Maser, Betty's husband, later obtained a consent judgment against the plaintiffs in the amount of $17,500 on his cause of action for expenses and loss of services.

At the time the accident occurred the defendant had issued an automobile liability insurance policy to the plaintiffs with limits of $50,000 for bodily injury to each person in each accident. After receiving notice of the accident, the defendant commenced an investigation of the accident. By December 9, 1970, the defendant's claim representatives had concluded that Larry Hadenfeldt had caused the accident and there was no defense against liability for the Maser claims.

The Masers employed Kenneth Cobb to represent them, and on January 22, 1971, Cobb wrote to the defendant stating he had been employed by the Masers.

The defendant's claim representatives contacted Cobb in February, March, April, and May of 1971. In a conversation with one of the defendant's claim representatives on March 31, 1971, Cobb made demands of $150,000 and $100,000, but stated if the policy limit was $50,000 he would convince his client to accept that amount plus another $30,000 from the Hadenfeldts making a total of $80,000. Cobb also stated he expected

Mrs. Maser to have permanent disability of over 50 percent.

On May 5, 1971, Cobb wrote to the defendant stating as follows: "If you want to make an offer of the coverage carried, I will talk to my client and see if she is willing to settle this matter. Please advise."

Sometime prior to June 10, 1971, the defendant offered $20,000 to settle the Maser claims. On June 10, 1971, the defendant offered Cobb $30,000 in settlement of the Maser claims. This offer was refused and Mrs. Maser's petition was filed June 22, 1971. The petition prayed for damages in the amount of $150,000.

The defendant employed Patrick W. Healey to defend the Maser action. On July 6, 1971, the defendant wrote to the plaintiffs notifying them the action had been commenced, that the amount claimed exceeded the policy limits, and that the plaintiffs were entitled to employ separate counsel at their expense to represent them concerning the excess liability. The plaintiffs talked with other counsel but decided to allow the case to be handled by the lawyers selected and employed by the defendant.

While the case was pending Healey corresponded with the plaintiffs and discussed various aspects of the case with them including the issue concerning the family purpose doctrine. He talked with them in person and by telephone on several occasions.

On February 11, 1972, Cobb wrote to Healey stating the Masers would accept $100,000 in settlement prior to trial. On February 16, 1972, Healey wrote to the plaintiffs and enclosed a copy of the February 11 letter from Cobb. Healey's letter discussed the "serious and multiple injuries" sustained by Mrs. Maser describing them in detail. The letter further stated that medical and hospital expenses were now in excess of $6,000, that Mrs. Maser had earned between $3,000 and $4,000 income per year before the accident, had not worked since, and had no plans to return to work in the near future.

An important issue in the Maser case so far as Allen

Hadenfeldt was concerned was whether the family purpose doctrine was applicable. Larry Hadenfeldt was a student, 19 years of age. Allen Hadenfeldt, Larry's father, was a farmer living near Cairo, Nebraska. Allen owned 480 acres of land, farmed another 160 acres, and raised both cattle and hogs.

By agreement of the parties, the issue relating to the family purpose doctrine was tried to the court separately on March 30, 1972, in advance of the jury trial. The trial court, however, took the matter under advisement and did not announce its finding in favor of the plaintiff until April 4, 1972, the first full day of the trial.

On April 3, 1972, before jury selection began, both counsel dictated statements into the record, in chambers, concerning settlement negotiations. Cobb stated the Masers would accept $90,000 payable $60,000 then, and $5,000 per year for 6 years plus costs. Healey stated he would discuss the offer with the plaintiffs who would be in Lincoln the next day. Healey further stated Cobb had never given any indication that settlement within the limits of the coverage would be considered by the Masers. Healey communicated the $90,000 settlement offer to the plaintiffs but they did not want to consider it or discuss it.

On April 4, 1972, a conference was held in Healey's office after the trial was over for that day. The plaintiffs were present together with two claim representatives of the defendant. There was an extensive discussion of settlement negotiations. Healey advised the plaintiffs that the verdict might be more than $50,000 or less than $50,000. A plan was formulated to offer $40,000 to Cobb that night when a deposition was to be taken. If that offer was refused, the defendant would offer $50,000, the full limit of the coverage on the following morning.

The $40,000 offer was refused so on the morning of April 5, 1972, Healey offered $50,000 in full settlement of both claims. This offer was also rejected but a counter-

offer to settle both claims for $65,000, payable $50,000 then and $5,000 per year for 3 years, was submitted by Cobb. This negotiation was made a matter of record in chambers.

When Healey returned to the counsel table he communicated the $65,000 offer to the plaintiffs. The offer was discussed more fully at a conference at Healey's office during the noon hour. The plaintiffs were present together with several other members of the family. Healey said it appeared the claim could not be settled within the limits of the coverage and explained that he could give no assurance the verdict would be for less than $50,000. The plaintiffs decided they did not want to accept the $65,000 offer and did not want to submit any counter-offer.

The trial proceeded and there was no further negotiation between the parties. The verdict in the amount of $72,500 for Mrs. Maser was returned on April 7, 1972. The action by George Maser was filed April 14, 1972.

The petition in this case alleged the defendant failed to negotiate and settle the Maser claims within the limits of the coverage when the opportunity was available to do so; failed to advise the plaintiffs of the nature and extent of the injuries and damages suffered by the Masers; and failed to advise the plaintiffs of the nature and extent of their potential liability.

The rules which are applicable to cases of this nature were considered at length in Olson v. Union Fire Ins. Co., 174 Neb. 375, 118 N. W. 2d 318. In that case we stated: "The liability of an insurer to pay in excess of the face of the policy accrues when the insurer, having exclusive control of settlement, in bad faith refuses to compromise a claim for an amount within the policy limit. The weight of authority is to the effect that when the insurer has the exclusive right to settle a claim within the limits of its liability, it has an option to compromise but no obligation to do so. In the event the insurer elects to resist a claim of liability, or to effect a

settlement thereof on such terms as it can get, there arises an implied agreement that it will exercise due care and good faith where the rights of an insured are concerned.

"The amount of liability fixed by the insurance policy, upon which the premium is paid, determines the limit of the contractual liability and duty of the insurer. An insurer may settle a claim within its limit of liability as it chooses since the insured cannot be injured by a settlement to be wholly paid by the insurer. The exclusive power to settle a claim within the limits of its liability is therefore ceded to the insurer for its sole benefit. While an insured may compromise his possible liability over and above the limits of the insurance policy, he has no duty even to attempt to do so. He may rely upon the policy, the promise to indemnify in a fixed amount, and the duty of the insurer to defend and to use its discretionary authority to settle in good faith. It is clear that the insurance company is not liable to plaintiff for refusal to settle his claim unless the refusal was in bad faith."

The Olson case involved a question of gross negligence under the guest statute. The insurer refused an offer to settle the case for the policy limits, $10,000, because it thought there was a good defense on the issue of liability. The plaintiff later recovered a judgment of $50,000. We held the insurer was not liable for the excess because, although mistaken as to the question of liability, it had not acted in bad faith.

The only evidence in this case as to any opportunity for the defendant to settle the Maser claims within the limits of the policy was some testimony by Cobb that during May or June 1971, he offered to accept $50,000 in full settlement of both claims. There was no other evidence of any opportunity for the defendant to settle the claims within the policy limits. The defendant's evidence was that such an offer was not made at any time.

The letter of May 5, 1971, was at most a solicitation

of an offer of settlement to be submitted to the Masers. The evidence is in dispute as to whether on May 5, 1971, Cobb knew what the policy limits were. The verdict resolved all factual issues in favor of the defendant.

The plaintiffs' allegation that the defendant failed to negotiate and settle the Maser claims within the limits of the coverage when the opportunity was available to do so is not sustained by the record. The defendant insurer refused no offer to settle the claims within the policy limits and had no opportunity to settle the claims within the policy limits. Furthermore, while the trial was in progress, the insurer offered to pay the full limits of the policy but its offer was rejected.

The record further shows the defendant advised the plaintiffs promptly that the Maser claims exceeded the limits of the coverage of the policy; that the injuries to Mrs. Maser were very severe; and that the verdict in her case might exceed the policy limits.

The plaintiffs produced three expert witnesses who testified that on the basis of information which was available to the defendant in May 1971, the Maser claims had a value of between $60,000 and $100,000. If the defendant had refused an offer to settle the claims within the limits of the coverage in May 1971, this evidence would have been very important. The record, however, establishes that the best settlement offer that was ever made was the $65,000 offer during the trial.

It is a fair statement from the evidence that Healey expected the verdict in the Maser case to be around $50,000. He advised the plaintiffs that the verdict might exceed $50,000 or be less than $50,000. This was his best judgment and it could not be a basis for a finding of bad faith. The treating physician had estimated Mrs. Maser's permanent disability at 15 percent and had testified that he had urged her to go back to work. A case of clear liability involving similar injuries in which the disability was 30 percent had been tried in

Lancaster County 4 months earlier and had resulted in a verdict for $51,000.

After considering the offer to settle the Maser claims for $65,000, Allen Hadenfeldt decided they might just as well "gamble with the jury." The plaintiffs understood the situation and elected to take their chances on the verdict. Their contention that they were entitled to judgment as a matter of law is without merit.

The petition alleged both negligence and bad faith as separate theories of recovery. At the close of the plaintiffs' evidence the trial court sustained a demurrer to the cause of action based on negligence. This ruling was correct.

While an insurer is obligated to use due care and reasonable diligence to ascertain the facts surrounding a claim and obtain competent legal advice concerning the claim, the ground for recovery in this state in this type of case is bad faith. Olson v. Union Fire Ins. Co., *supra*. The evidence in this case showed the defendant used due care and diligence. The record did not establish negligence on the part of the defendant in the investigation or handling of the claims.

The plaintiffs made several unsuccessful attempts to compel the defendant to produce its manuals for field claims adjusters and claims superintendents for handling bodily injury claims. Such a motion requires a showing of good cause. § 25-1267.39, R. R. S. 1943.

The trial court properly held the defendant in this case was required to use the diligence, skill, and care ordinarily employed by persons in the insurance industry. There was no issue that could be determined upon the basis of company standards or rules prescribed by the defendant. See Lorenzen v. Continental Baking Co., 180 Neb. 23, 141 N. W. 2d 163. The manuals were not relevant to any issue in the case and there was no showing of good cause for their production.

The plaintiffs also complain that instruction No. 7 was erroneous and conflicted with instruction No. 11.

Instruction No. 7 was as follows: "INSTRUCTION NO. 7.

" 'Good faith' implies honesty, fair dealing and full revelation.

" 'Bad faith' implies dishonesty, fraud and concealment. To constitute bad faith, there must be something more than a mere showing of inadvertence or honest mistake of judgment.

"Good or bad faith is a state of mind. Of necessity it must be determined from proof of conduct, except as the owner of the mind discloses its operations. The Defendant being a corporation, could act only through agents, whose state of mind is that of the Defendant.

"Patrick Healey was the agent of the Defendant, State Farm Mutual Insurance Company, and any and all acts or failures to act on his part is imputed to and the responsibility of the Defendant, State Farm Mutual Insurance Company."

Instruction No. 11 was as follows: "INSTRUCTION NO. 11.

"The Bad Faith that must be proven by an insured in order to recover judgment against his insurance company for its alleged bad faith failure to settle a case within the policy limits or to take into account the potential liability of the insured for an excess judgment does not require proof of an actual dishonest intent, concealment, or deliberate disregard of the insured's welfare. Rather, Bad Faith is demonstrated by the insurance company's unwarranted rejection of an offer to settle within the policy limits, or a complete and total failure to take into account the potential liability of its insured for an excess judgment, or an insurer's failure to timely and adequately inform its insured of the insurer's adverse interest, of settlement, demands and offers, and of the potential value of the case."

Instruction No. 7 appears to have been based upon the following statement in Olson v. Union Fire Ins. Co., *supra:* "The general rules as to the liability of the insurer are

stated in Davy v. Public National Ins. Co., 181 Cal. App. 2d 387, in the following apt language: 'Good faith implies honesty, fair dealing and full revelation. * * * Bad faith implies dishonesty, fraud and concealment. * * * Neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith. * * * As a consequence, liability upon the part of the insurer for refusal to accept an offer of settlement may not be predicated upon its failure to correctly predict the outcome of the action it is defending.' As one court aptly stated: 'The gift of prophecy has never been bestowed on ordinary mortals, * * *.' Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S. W. 2d 777."

Instruction No. 7 was in the nature of an abstract definition of good faith and bad faith. Instruction No. 11 was a definition of bad faith as it applied in the case under consideration. The trial court did not instruct the jury that the plaintiffs were required to prove dishonesty, fraud, or concealment in order to recover.

The trial court further instructed the jury that the defendant had assumed a fiduciary position toward the plaintiffs and was obligated to act for their benefit as to matters within the scope of that relation; and that the defense attorney retained by the defendant owed the same obligation of good faith to the plaintiffs as if he had been retained by them personally. Considered as a whole the instructions were not erroneous.

The judgment of the District Court is affirmed.

AFFIRMED.