Frank KIRK, Administrator of the
Estate of Vance S. Kirk,
Deceased, Appellee,

v.

FARM & CITY INSURANCE
COMPANY, Appellant.

Frank KIRK and Shirley
Kirk, Appellants,

v.

FARM & CITY INSURANCE
COMPANY, Appellee.

No. 88–1413.

Supreme Court of Iowa.

June 20, 1990.

David J. Grace of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C., Des Moines, for appellant.

Richard O. McConville of Scalise, Scism, Sandre & Uhl, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Vance Kirk and two companions were killed in a one-car accident in Illinois in April 1984. The car was owned by Lanny Weeks, one of the occupants. Neither Weeks nor the car was insured. Vance Kirk was covered under two insurance policies with Farm & City Insurance Company, both of them containing uninsured motorist coverage in the amount of $20,000.

A demand under the uninsured motorist provisions was made by the administrator of Kirk's estate, but Farm & City offered only one-half. The estate filed suit to recover under the policy and demanded punitive damages for the insurance company's failure to pay. Vance's parents filed a separate suit to recover for intentional infliction of emotional distress, allegedly caused by Farm & City's refusal to pay the full amount of the uninsured coverage. On the estate's case, the district court awarded damages, including punitive damages, against Farm & City. In the claim for intentional infliction of emotional distress, the court denied recovery. Farm & City appealed in the first case, and the plaintiffs "cross-appealed" in the second.[1]

We transferred the appeals to the court of appeals, which reversed the judgment for punitive damages, affirmed the denial of damages for intentional infliction of emotional distress, and remanded the estate's case for a determination of whether the facts justified a recovery under a first-party, bad-faith claim as recognized by this court in *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988). We vacate the court of appeals decision, reverse the district court on the defendant's appeal, and affirm on the plaintiffs' appeal in the intentional infliction case.

Vance Kirk and his companions died in Illinois late on the 19th or early on the 20th of April 1984, when a car owned by Lanny Weeks, one of the occupants, struck a tree at a high rate of speed. All three occupants were thrown from the vehicle and apparently killed instantly. There were no other eyewitnesses, and no one is available to say with certainty who was driving at the time. This was a critical issue at trial, because if Vance Kirk was shown to have been the driver, his uninsured motorist coverage would not apply. All of the occupants had been drinking beer prior to the accident.

On May 1, 1984, Vance Kirk's parents reported the accident to their insurance agent and retained an attorney, Richard Murphy, to represent them. John Whelan, an adjuster for Farm & City, soon began his investigation by ordering a copy of the sheriff's report, which was received on May 7. The report stated that the driver was "undetermined." The adjuster also learned from Richard Weeks, father of the deceased owner of the car, that there was apparently no insurance on either the car or its owner. The adjuster inquired at the salvage yard where the car was taken as to whether any other insurance representatives had come to see the wreckage. Apparently none had.

On May 15, 1984, Mr. Whelan had a telephone conversation with attorney Murphy. Whelan offered one-half the policy amount, or $10,000, stating that the company was refusing full payment because it had doubts as to who was driving and because of the possibility that any recovery on Vance's behalf might be reduced because of his own contributory fault.

On May 25, Murphy called the insurance company and rejected the offer of one-half. He demanded payment under the medical payment provisions of the policy, and Farm & City promptly complied. On June 14, Murphy again rejected the offer of one-half, this time in writing. He demanded payment of the full $20,000. Ralph Summa, who had assumed the responsibilities

---

1. The defendant, Farm & City, raises a procedural point regarding the plaintiffs' "cross-appeal," claiming that it in fact is not a cross-appeal but an appeal in a separate case and that it was not timely filed. Farm & City does not pursue this issue on appeal, and in view of our disposition of the case on the merits, we do not find it necessary to resolve that point.

of adjusting the claim, responded by saying:

This will acknowledge receipt of your letter of June 14, 1984 regarding Vance S. Kirk.

After reviewing the file and the sheriffs report from Henry County Illinois it would appear that we will be unable to raise our $10,000.00 offer.

I'm sure that you are aware that the state of Illinois has comparative negligence and assumption of the risk defense and it would certainly appear from our investigation that our $10,000.00 offer in this case would be adequate for this claim.

This adjuster testified at trial that he had based his assumption-of-the-risk theory on the fact that Kirk had apparently acquiesced in reckless, and perhaps drunken, driving on the part of Weeks.

On November 20, 1984, Murphy again wrote demanding full payment under threat of suit. He did not respond to Summa's assumption-of-the-risk theory. Summa responded by writing:

This will acknowledge your letter of November 22, 1984, regarding Kirk S. Vance [sic].

I don't know how much investigation you have made into this matter but our investigation would disclose that under the law of Illinois where the accident occurred that there would be questionable recovery. As you know Illinois is a comparative negligence state and the facts of the accident would certainly indicate that Vance S. Kirk was assuming the risk in this high speed automobile.

We believe under the circumstances in this case that our $10,000.00 offer under the UM coverage is fair and equitable and we will not be in a position to increase it.

The sparring continued between Murphy and the insurance company, but to no avail. The parties remained adamant in their respective positions. On March 6, 1986, the administrator's suit on the policy was filed; and on April 19, 1986, the parents' separate suit for intentional infliction of emotional distress was filed.

## I. *The Administrator's Suit.*

The administrator sued on four theories: (1) breach of the insurance contract; (2) false or fraudulent misrepresentations; (3) negligent misrepresentations; and (4) first-party, bad-faith failure to settle. As noted above, the district court found for the plaintiff on the breach-of-contract claim and awarded damages of $20,000. (This part of the judgment was paid, and this is not an issue on appeal.) The court also found fraud, under the second ground, and awarded punitive damages of $50,000. Ironically, the court found no bad faith, despite its conclusion that Farm & City committed fraud.

■ A. On the defendant's appeal, it raises four issues: (1) lack of evidence of false representations, (2) finding of reliance on the misrepresentations, (3) allowing recovery by the administrator for misrepresentations made to the parents of the decedent, and (4) awarding prejudgment interest on punitive damages. (The plaintiff concedes on appeal that such interest may not be allowed on punitive damages.)

Because false representations and reliance are both required to sustain the administrator's claim for false representations, we will discuss issues (1) and (2) together. At the outset, it is difficult to determine the legal basis for the district court's ruling. Its findings and conclusions do not state whether the misrepresentations it found were made intentionally or merely negligently. (The plaintiff alleged both theories.) We will assume that the court held that the misrepresentations were fraudulent in view of the fact that it allowed punitive damages. The conclusions of law, moreover, do not suggest what elements were considered necessary to establish fraud, and the legal analysis of the court in reaching its conclusions is difficult to ascertain, because no legal authorities are cited. The defendant attempted to obtain this additional information from the court through a motion to expand the findings and conclusions under Iowa Rule of Civil Procedure 179(b), but the request was denied.

The district court found that several statements by Farm & City's adjuster, made during the parties' settlement negotiations, were false and that the adjuster knew they were false. We assume, but cannot determine with certainty, that the principles of fraudulent misrepresentation underlying the district court's judgment were as enunciated in the Restatement of Torts, which provides:

### Liability for Fraudulent Misrepresentation

One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (Second) of Torts § 525, at 55 (1977).

Under the Restatement,

[a] misrepresentation is fraudulent if the maker

(a) knows or believes that the matter is not as he represents it to be,

(b) does not have the confidence in the accuracy of his representation that he states or implies, or

(c) knows that he does not have the basis for his representation that he states or implies.

Restatement (Second) of Torts § 526, at 59 (1977).

The first misrepresentation found by the district court was the adjuster's assertion in settlement negotiations with Murphy that any recovery on Kirk's behalf would be subject to reduction because of his contributory fault in remaining in the car, under the circumstances, driven at excessive speed and by a person who had been consuming beer. The company's liability for uninsured coverage would not exceed the amount to which Kirk would have been entitled in a suit by him against the host driver. *See Klimek v. State Farm Mut. Auto. Ins. Agency*, 348 N.W.2d 103, 106 (Minn.App.1984).

According to the adjuster, several factors led him to this conclusion, and his feeling had been ratified by discussions with an Illinois insurance adjuster familiar with Illinois law. According to the adjuster, he believed that Kirk had a duty to protect himself by protesting the speed at which the car was operated. The car virtually disintegrated upon striking the tree, and the assertion that it was driven at an extremely high rate of speed is not challenged. The adjuster believed that the company should be permitted to argue that Kirk had a duty to leave the vehicle if he could. It has been noted that

[t]he exercise of reasonable care for his own safety on the part of one riding in a motor vehicle driven by another may require not only that he remonstrate or protest against negligent or reckless conduct on the part of the driver, but also that he request the driver to stop so that he may leave the vehicle, where the driver disregards his remonstrations or protests....

The question of the negligence of one riding in a motor vehicle driven by another in failing to leave the vehicle in view of the negligent or reckless conduct of the driver, is ordinarily one of fact for the jury.... Thus, in some cases it has been held that it was a question for the jury whether a guest was negligent in failing to make an effort to leave a motor vehicle in view of the driver's excessive speed or intoxicated condition....

7A Am.Jur.2d *Automobiles and Highway Traffic* § 601, at 832–33 (1980) (footnotes omitted).

Another statement made by the adjuster in justifying a reduced offer of settlement was that the company had no "proof" that Kirk was not the driver. If he had been the driver, no uninsured motorist coverage would apply. At the time this statement was made, the court ruled, it was false and known by the company to be false, because it had in its files some evidence showing that Lanny Weeks, the owner, was the driver. The district court concluded that, in the face of this information in its files, the company's statement that it lacked "proof" that Kirk was not the driver was knowingly false.

The insurance company points out that other circumstances known to it at the time suggested that, in fact, Kirk might have been the driver. One factor was that the position of the bodies was such that Kirk was closest in proximity to the driver's seat, and the reckless manner in which the car had been operated was more consistent with Kirk's driving habits than those of Weeks.

The point now is not whether Kirk was driving or whether comparative fault of Kirk could reduce the amount of damages. The point now is, to paraphrase a familiar quotation from a famous case, what did Farm & City know, and when did it know it? When its adjuster said it lacked "proof" of the fact that there was no insurance, that Kirk was not the driver, and that Kirk's contributory fault might reduce his recovery against the host driver, we believe, as did the court of appeals, that these were all fairly debatable matters and that no substantial evidence supported the district court's findings that they were knowingly false. The burden of proof on these issues was on the claimant.

While we believe that the court of appeals was probably correct in reversing on the ground that there was no substantial evidence to support the finding of false statements, we believe that the failure of proof on the issue of reliance is dispositive in any event.

The Restatement provides this with respect to reliance:

> The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if,
>
> (a) he relies on the misrepresentation in acting or refraining from action, and
>
> (b) his reliance is justifiable.

Restatement (Second) of Torts § 537, at 80 (1977).

In regard to the matter of reliance, the district court found that

> plaintiffs relied on defendant's representations in refraining from filing suit on the policy for a period of one-and-a-half years, in hiring attorneys, incurring expenses, and attempting to find the information and supply the information requested by the defendant.

We believe that there is no substantial evidence of reliance. The relationship between Farm & City and the Kirks was confrontational from the beginning; it was not one of reliance. The Kirks demanded payment under the policy in full, and Farm & City simply refused. The Kirks' attorney made it clear that it was an adversarial relationship, announcing early in their negotiations that, if Farm & City did not comply with his demands, suit would be filed.

The court's finding that the Kirks refrained from filing suit for a year and one-half is not supported by any evidence. In fact, the plaintiffs do not even make such a claim. The finding that these representations caused the plaintiffs to hire an attorney is similarly without support. The representations by the adjusters were in fact made to the attorney who had already been hired by the Kirks.

We conclude, as did the court of appeals, that the false representations found by the court were not established. We hold, therefore, that the punitive damages based on alleged false statements were improperly allowed.

■ B. The defendant also raises an issue regarding the court of appeals' remand of the case for a re-examination by the district court of the plaintiffs' claim of first-party, bad-faith failure to settle, an argument which was rejected by the district court. Prior to *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988), the state of our law was unclear with respect to first-party claims in insurance cases. In *Dolan* we recognized such a claim, in principle, but denied recovery on the basis of bad faith because we found that the insurance company's liability was "fairly debatable." *Id.* at 794.

*Dolan* was decided after the trial of this case and before the filing of the court of appeals decision. The court of appeals remanded for a reconsideration of the bad-faith claim in light of *Dolan.* We agree with the defendant that the court of ap-

peals should not have remanded the case for this purpose. The issues raised by the defendant in denying full payment under the policy were "fairly debatable" under the test predating *Dolan* and which was actually applied in *Dolan*, 431 N.W.2d at 794.

We reverse on the defendant's appeal and remand for dismissal of the administrator's claims based on both the fraud and bad-faith theories.

## II. *The Parents' Appeal.*

■ The parents' cross-appeal challenges the district court's dismissal of their claim for intentional infliction of severe emotional distress. The plaintiffs had the burden of proof on the elements of such a claim and failed to carry it in the district court. To succeed on appeal, therefore, they must prove their case as a matter of law. *Tubbs v. United Cent. Bank*, 451 N.W.2d 177, 182 (Iowa 1990).

■ Our cases have established very stringent requirements for proving the elements of this tort, particularly with respect to the element of outrageous conduct. Such conduct must be "so extreme in degree, so as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bossuyt v. Osage Farmers Nat'l Bank*, 360 N.W.2d 769, 777 (Iowa 1985).

For all of the reasons discussed in division I, we believe that the plaintiff failed to establish that the defendant's conduct was so outrageous that recovery may be allowed under this theory. Accordingly, we affirm on the cross-appeal.

COURT OF APPEALS DECISION VACATED; JUDGMENT OF DISTRICT COURT REVERSED ON APPEAL, AFFIRMED ON CROSS–APPEAL.