DUANE E. BRAESCH, APPELLANT, V. UNION INSURANCE COMPANY, AN INSURANCE CORPORATION, APPELLEE.
HELEN E. BRAESCH, APPELLANT, V. UNION INSURANCE COMPANY, AN INSURANCE CORPORATION, APPELLEE.

464 N.W.2d 769

Filed January 18, 1991.    No. 88-772.

Thomas J. Guilfoyle, of Frost, Meyers, Guilfoyle & Govier, and J. Patrick Green for appellants.

Edward F. Noethe, of Sodoro, Daly & Sodoro, for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Fahrnbruch, J.

These appeals each involve two issues: (1) whether an insurer may be held liable in tort if the insurer acts in bad faith in refusing to settle a claim with its policyholders who are also entitled to receive benefits under the policy, and (2) whether each appellant's amended petition states a proper theory of recovery for intentional infliction of emotional distress.

The trial court sustained demurrers to each of the petitions and dismissed the appellants' lawsuits. In each appeal, we reverse the trial court on the first issue and affirm the trial court on the second issue.

In reviewing an order sustaining a demurrer, this court accepts the truth of facts well pled and the factual and legal inferences which reasonably may be deduced from such facts, but does not accept conclusions of the pleader. *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990). In ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990). A court may not assume the existence of any facts not alleged, find facts in aid of the pleading, or consider evidence which may be introduced at trial. *St. Paul Fire & Marine, supra.*

In this case, Duane E. and Helen E. Braesch, husband and wife, each brought identical actions against Union Insurance Company (Union), an insurance corporation.

In virtually identical amended petitions and attachments, the Braesches alleged in substance that Union issued to them as policyholders an insurance policy for valuable consideration; that under the policy's terms, Union agreed to pay all sums, up to the maximum of $100,000, which the insured or covered person was legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury; that on or about October 12, 1984, the plaintiffs' daughter, Lori J. Braesch, was the driver of an automobile which was covered by the policy; that she was involved in a collision with an uninsured motorist, David R. Brockhaus; that

as a result of the collision, Lori Braesch died; and that Brockhaus' negligence was the sole and proximate cause of Lori Braesch's death. Each of the Braesches further alleged that Duane E. Braesch, as special administrator of his daughter's estate, commenced an action against Union under the uninsured motorist provisions of the policy on behalf of the appellants; that on March 5, 1987, following a trial, judgment in the amount of $185,000 was entered in favor of the plaintiff Duane Braesch, as special administrator; and that on March 18, 1987, Union paid to the plaintiff as special administrator its policy coverage of $100,000.

In each of their first theories of recovery, the Braesches claim that Union's refusal to settle under the uninsured motorist provisions of Union's policy constituted the tort of bad faith. The Braesches alleged that each was a policyholder and that as a beneficiary of Union's insurance policy, each of them was owed a duty of good faith. It was further claimed that despite repeated efforts by the Braesches and their counsel to settle the suit on the uninsured motorist coverage, Union, in bad faith, refused to settle such litigation and never entered into serious negotiations, and engaged in only a perfunctory investigation and developed no defense. Each amended petition alleges that Union's refusal to settle was part of an effort to put psychological pressure on each of the Braesches to settle the wrongful death claim for sums considerably less than its value. The Braesches allege that because of Union's bad faith actions, each of them was forced to endure a trial in which each relived the death of their daughter, causing each of the appellants to suffer profound emotional distress.

Relying on the same facts alleged in their first theory of recovery, the Braesches alleged in their respective second theories of recovery that Union's actions under the circumstances constituted the tort of outrage. The Braesches alleged that Union knew or had reason to know that its bad faith refusal to settle the litigation brought by Lori Braesch's special administrator would cause each of the appellants severe emotional distress. The appellants contend that as a direct and proximate result of Union's conduct, each of them has been forced to suffer profound mental pain and suffering as a result

of reliving the death of their daughter in an unnecessary trial of the action.

Each of the Braesches asked for general damages.

Since the two amended petitions are substantially identical, our analysis will be equally applicable to both amended petitions. Attached to and made part of both amended petitions was a copy of Union's auto policy issued to both of the appellants, together with a copy of the special administrator's petition from the former action against Union.

Union demurred to both amended petitions on the ground that they did not state facts sufficient to constitute a cause of action. The trial court sustained Union's demurrer to each amended petition and dismissed them.

The plaintiffs' three assignments of error merge to allege that the trial court erred in failing to (1) recognize that a cause of action exists in Nebraska for a bad faith failure on the part of a first-party insurer to promptly pay a claim made by its policyholder, where litigation of the claim is not warranted, and (2) find that the claims for intentional infliction of mental distress were well pleaded.

## I. BAD FAITH SETTLEMENT

This state recognizes a cause of action for an insurer's bad faith in refusing to settle a claim with a third party. In *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 118 N.W.2d 318 (1962), the insured collided with a bridge, and one of his passengers sustained injuries resulting in total and permanent disability. In the passenger's suit against the insured, the insurer refused to settle the claim with the passenger despite an offer to settle the claim for $10,000. The jury returned a verdict in the sum of $50,000 against the insured. Thereafter, the plaintiff, individually and as assignee of the insured, commenced suit against the insurer, asserting negligence and bad faith by the insurer in refusing to settle the passenger's claim for $10,000. This court held: "The liability of an insurer to pay in excess of the face of the policy accrues when the insurer, having exclusive control of settlement, in bad faith refuses to compromise a claim for an amount within the policy limit." *Id*. at 379, 118 N.W.2d at 320-21. The rationale for the rule is that "[i]n the

event the insurer elects to resist a claim of liability, or to effect a settlement thereof on such terms as it can get, there arises an implied agreement that it will exercise due care and good faith where the rights of an insured are concerned." *Id.* at 379, 118 N.W.2d at 321.

Although the court in *Olson, supra*, did not explicitly couch its rationale in terms of a fiduciary relationship between the insured and insurer, that apparently is the theory underlying the liability. In *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 239 N.W.2d 499 (1976), a case again involving alleged bad faith in refusing to settle a third-party claim, this court cited with approval an instruction that the insurer had assumed a fiduciary position toward the insured. A number of courts ground liability on the theory of a fiduciary relationship. See, e.g., *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255 (Miss. 1988); *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 237 N.W.2d 706 (1976). See, also, 15A G. Couch, Cyclopedia of Insurance Law § 58:6 (rev. 2d ed. 1983). The appellants ask this court to extend the rule announced in *Olson, supra*, to an insurer's bad faith in refusing to settle a claim with its policyholder, otherwise known as a first-party claim, see 2 A. Widiss, Uninsured and Underinsured Motorist Insurance § 20.1 (2d ed. 1990).

The tort of bad faith refusal to settle a first-party insurance claim with a policyholder was first recognized in California. In *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480 (1973), an insured brought an action against his insurers and others, alleging bad faith and outrageous conduct in denying payment of three fire insurance policies. The California Supreme Court held:

> [I]n every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

*Id.* at 575, 510 P.2d at 1038, 108 Cal. Rptr. at 486.

Disagreeing with the rationale of the *Gruenberg* court,

Union argues that there is a fundamental distinction between third-party and first-party claims. Union contends that in the context of a third-party claim, the fiduciary duty of an insurer to act in good faith rests on the reservation of the exclusive right to contest or negotiate the claim of liability brought against the insured, which reservation withholds from the insured the right to settle without consent of the insurer. Such agreements, Union claims, repose in the insurer the power to act for the insured, akin to authority a client vests in an attorney or a principal in an agent—each a relationship of inherent fiduciary obligation. In contrast, Union points out, under the uninsured motorist provisions, the insured seeks recovery from the insurer for the negligence of an uninsured motorist. Union maintains that in such a situation, the insured and the insurer become adversaries, not principal and agent who deal in trust. Union argues that there is not a tort of bad faith in the first-party situation because a fiduciary relationship is lacking. See, e.g., *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980); *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo. App. 1978). Distilled to its essence, Union's argument is that in the absence of a fiduciary relationship, there is no obligation flowing from the insurer to the insured. We find this view unpersuasive and conclude that the better view is expressed as follows in *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565, 569 (7th Cir. 1978):

> Under third party liability coverage, when the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer. It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the "fiduciary" nature of the insurer's duty. . . . In the uninsured motorist situation there is no element of "control" of the insured's side of the litigation by the insurance company which would give rise to a "fiduciary" duty. It does not necessarily follow that the insurer is completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal

bargaining positions of the contractants, rather than the insurance company's "control" of the litigation.

An overwhelming majority of jurisdictions which have addressed the issue now recognize the tort of bad faith in first-party cases. See *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo. 1990), and cases cited therein. The theory underlying the tort is that the law implies a covenant of good faith and fair dealing. See, e.g., *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986); *Gruenberg, supra*; *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988); *United States Fidelity v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 452 N.E.2d 1315 (1983); *MFA Mut. Ins. Co. v. Flint*, 574 S.W.2d 718 (Tenn. 1978); *Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987); *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). This court has acknowledged that there is an implied covenant of good faith and fair dealing under some contractual circumstances. See, *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 118 N.W.2d 318 (1962) (in the event the insurer elects to resist a claim of liability, or to effect a settlement thereof on such terms as it can get, there arises an implied agreement that it will exercise due care and good faith where the rights of an insured are concerned); *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986) (when contractual agreements guarantee that employees may not be fired without just cause, there is an implied covenant of good faith or fair dealing).

It has been argued that by creating a tort for a bad faith settlement of a first-party insurance claim, the floodgates will be opened for tort actions based upon a breach of any contract. See, e.g., *Kewin v Massachusetts Mutual*, 409 Mich. 401, 295 N.W.2d 50 (1980). Because of the nature of first-party insurance contracts, that concern is unfounded. The public interest in insurance contracts, the nature of insurance contracts, and the inequity of the bargaining power between the insurer and the policyholder all serve to distinguish insurance contracts from other types of contracts. Each of these three factors will be discussed in order.

It has been said that the insurance business is affected with a

public interest. *Nichols v. State Farm Mutual Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983); *McCullough v. Golden Rule Ins. Co., supra.* The veracity of that statement is plainly evidenced by the degree of regulation of the insurance industry. In fact, the Nebraska Legislature has declared:

> [T]he business of apportioning and distributing losses arising from specified causes among all those who apply and are accepted to receive the benefits of such service, is public in character, and requires that all those having to do with it shall at all times be actuated by good faith in everything pertaining thereto . . . .

Neb. Rev. Stat. § 44-101 (Reissue 1988). Furthermore, the Legislature has mandated that no policy insuring against loss resulting from liability may be delivered or issued for delivery in this state unless coverage is provided for protection from uninsured motorists. See Neb. Rev. Stat. § 60-509.01 (Reissue 1988). In view of the statutory requirement that all automobile liability policies include coverage for uninsured motorists, the public interest is of the highest order in this case. See, *Escalante v. Sentry Insurance*, 49 Wash. App. 375, 743 P.2d 832 (1987); 2 A. Widiss, Uninsured and Underinsured Motorist Insurance § 20.3 (2d ed. 1990).

> Tort actions for breach of covenants implied in certain types of contractual relationships are most often recognized where the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant. When dealing with an innkeeper, a common carrier, a lawyer, a doctor *or an insurer*, the client/customer seeks service, security, peace of mind, protection or some other intangible. These types of contracts create special, partly noncommercial relationships, and when the provider of the service fails to provide the very item which was the implicit objective of the making of the contract, then contract damages are seldom adequate, and the cases have generally permitted the plaintiff to maintain an action in tort as well as in contract.

(Emphasis supplied.) *Rawlings v. Apodaca*, 151 Ariz. 149, 159, 726 P.2d 565, 575 (1986). Other courts have acknowledged that

the noncommercial aspect of insurance distinguishes it from other types of contracts for which a breach does not sound in tort. See, *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985) (an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure a commercial advantage); *Nichols v. State Farm Mutual Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983) (an insured does not contract to obtain any kind of commercial advantage but only to protect himself against the specter of loss).

Certainly, the inequity in the bargaining power of the insurer and insured differentiates the instant insurance contract from the run-of-the-mill contract. Parenthetically, it is noted that a number of courts have asserted that this sole factor supplies the rationale for creating a bad faith tort for a failure to settle a first-party claim. See, e.g., *Rawlings, supra*; *Dolan v. Aid Ins. Co.*, 431 N.W.2d 795 (Iowa 1988); *Nichols, supra*; *Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987); *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo. 1990). As discussed in *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 318 (R.I. 1980):

> [I]nsurers, backed by sufficient financial resources, are encouraged to delay payment of claims to their insureds with an eye toward settling for a lesser amount than that due under the policy. . . . The inequity of this situation becomes particularly apparent [when] the insured, often pursued by creditors and devoid of bargaining power, may easily be persuaded to settle for an amount substantially lower than that provided for in the insurance contract.

In relevant part, Neb. Rev. Stat. § 44-359 (Reissue 1988) provides, "In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . against any [insurance] company . . . doing business in this state, the court, upon rendering judgment against such company . . . shall allow the plaintiff a reasonable sum as an attorney's fee . . . ." Union argues that § 44-359 provides the necessary incentive for insurers to settle their claims in good faith, making other remedies superfluous.

Other courts have held contrary to Union's position. See, *Aetna Casualty & Surety v. Broadway Arms*, 281 Ark. 128, 664

S.W.2d 463 (1984) (neither a trade practices act nor a penalty-and-fees statute preempt area upon which tort of bad faith is founded); *Dolan v. Aid Ins. Co., supra* (statutory penalty provisions inadequate); *McCullough v. Golden Rule Ins. Co., supra* (attorney fees, as well as other statutory provisions, are inadequate because they do not provide the same scope of remedies as found in the good faith and fair dealing tort remedy).

In the case before us, attorney fees would do nothing to compensate the appellants for the mental suffering they have alleged in their amended petitions. Particularly, in extreme cases, an award of attorney fees falls far short of compensating a policyholder who may be disabled and hounded by creditors as a result of injuries suffered in a collision with an uninsured motorist.

It is further noted that prejudgment interest inadequately compensates a policyholder, since its award is dependent on an offer of settlement by a plaintiff. See Neb. Rev. Stat. § 45-103.02 (Reissue 1988). The offer of settlement of a lawsuit assumes that an action has been filed. The filing of the lawsuit may be preceded by months during which the policyholder is in dire straits. As is the case with attorney fees, prejudgment interest does nothing to compensate for mental suffering.

During oral argument, Union contended that the appellants never alleged that they made demand within the policy limits upon the insurer and that this was a fatal defect in the pleadings. However, in the petition from the former action, which was attached to and made part of the amended petitions, it was alleged that timely demand was made on Union or its agents for payment of the damages provided for under the terms of the insurance policy, but that Union refused payment of the sums demanded. In ruling on a demurrer, documents attached to and made part of the petition may be considered. *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977). This contention is without merit.

As recalled, a first-party bad faith cause of action is based upon allegations that the insurer, in bad faith, refuses to settle with its own policyholder insured, who thereby suffers some type of direct loss. See, e.g., *Dolan v. Aid Ins. Co., supra*. In

contrast, a traditional third-party bad faith claim arises when an insurer wrongfully fails to settle a claim by a third party against an insured. See, e.g., *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 239 N.W.2d 499 (1976).

In this case, the Braesches have not alleged in the amended petitions that as "covered persons" under the policy, they have directly suffered from Union's bad faith settlement of their claim. Rather, they maintain, in effect, that as the next of kin and as father and mother, respectively, of Lori Braesch, the "covered person" in this instance, they may assert a first-party bad faith claim based upon their status as policyholder beneficiaries under the insurance policy. Union contends that it would be unwise to extend first-party bad faith actions to policyholder beneficiaries because it would be beyond any reasonable expectations of the parties.

The cases denying a nonpolicyholder standing to assert a first-party bad faith claim have done so on the basis that a contractual relationship was lacking between the plaintiff and insurer. See, e.g., *Niemeyer v. U.S. Fidelity and Guar. Co.*, 789 P.2d 1318 (Okla. 1990); *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989). The reasoning in those cases is inapplicable here because the appellants are policyholders *and* beneficiaries, not strangers to the contract. As indicated, the theory underlying the tort of bad faith settlement of a first-party claim is that there is an implied covenant of good faith and fair dealing. This covenant is dependent upon a contractual relationship between the plaintiff and the insurer. In this case, the Braesches are not only beneficiaries, but are also policyholders and as policyholders are clearly contractual parties to the contract.

As to nonpolicyholder beneficiaries, there is merit to Union's argument. The following hypothetical demonstrates the problems engendered by allowing nonpolicyholders to bring a bad faith cause of action. Under the terms of the policy, a "covered person" includes any person occupying the Braesches' automobile. Assume that the car is loaned to a neighbor who is involved in an accident with an uninsured motorist. Unless the first-party claimant is limited to policyholders, the neighbor would be entitled to assert a

first-party action for the insurer's bad faith in failing to settle with him or her. This makes little sense, since the tort is based on the covenant of good faith and fair dealing which, in turn, is premised on a contractual relationship. In this hypothetical, a contractual relationship between the Braesches' insurer and their neighbor is absent.

For those reasons, we hold that only (1) an injured policyholder who is also a "covered person" or (2) a policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for failure to settle the policyholder's insurance claim. As policyholder beneficiaries, both of the appellants have standing to bring the causes of action for bad faith failure to settle each of the appellants' claims.

We next consider the standard of care required of an insurer in settling a claim with its policyholder. Our analysis begins with an examination of the standard of care expressed in the Nebraska third-party cases. In *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 382, 118 N.W.2d 318, 322 (1962) (quoting *Davy v. Public National Ins. Co.*, 181 Cal. App. 2d 387, 5 Cal. Rptr. 488 (1960)), we asserted, " 'Good faith implies honesty, fair dealing and full revelation. . . . Bad faith implies dishonesty, fraud and concealment. . . . Neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith. . . .' " This court later declared that in *Olson, supra,* "the insurer was not liable for the excess because, although mistaken as to the question of liability, it had not acted in bad faith." *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 583, 239 N.W.2d 499, 503 (1976). We further held in *Hadenfeldt* that "[w]hile an insurer is obligated to use due care and reasonable diligence to ascertain the facts surrounding a claim and obtain competent legal advice concerning the claim, the ground for recovery in this state in this type of case is bad faith." *Id.* at 585, 239 N.W.2d at 504. From the foregoing, it is clear that something more than negligence is required in third-party cases; there must be some level of intentional wrongdoing.

Varying articulations of the standard of care have been announced by the courts which have addressed the issue. The leading case on the standard of care in first-party bad faith

actions is *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). In *Anderson*, the court stated:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the [insurance] policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. "Bad faith" by definition cannot be unintentional.

*Id.* at 691, 271 N.W.2d at 376. A number of cases have followed the *Anderson* test. See, *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981); *Noble v. National Am. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 795 (Iowa 1988); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313 (R.I. 1980). Other jurisdictions, while not specifically following *Anderson*, require some showing of intent. See, *Aetna Casualty & Surety v. Broadway Arms*, 281 Ark. 128, 664 S.W.2d 463 (1984) (the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid liability under an insurance policy and cannot be based upon negligence or honest errors in judgment); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 452 N.E.2d 1315 (1983) (bad faith embraces more than bad judgment or negligence; it imports conscious wrongdoing); *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988) (a claimant who asserts that a carrier has breached its duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim).

The Wyoming and South Carolina courts occupy a unique position. They seem to require negligence to enable the plaintiff to recover bad faith damages, but an element of intent is not mandatory unless punitive damages are also sought. See, *Nichols v. State Farm Mutual Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983) (holding that an insured can recover consequential damages by establishing bad faith or unreasonableness on the part of the insurer, but to recover

punitive damages, the insured is required to show that the insurer's actions were willful or in reckless disregard of the insured's rights); *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo. 1990) (certifying that the test to determine bad faith is objective standard of whether validity of denied claim was not fairly debatable and award of punitive damages for bad faith requires proof of wanton or willful misconduct). Since punitive damages are not allowed in Nebraska, see *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960), this approach is unworkable, even if this court were prepared to accept a negligence standard.

Based on our existing precedent on the standard of care in the third-party cases, as well as on policy considerations, the standard of care set forth in *Anderson, supra*, is adopted. A requirement of intentional or reckless conduct arises from the commonsense notion that "[t]he insurer . . . must be accorded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). We conclude that the *Anderson* standard of care strikes a proper balance between the respective rights of the insurer and the policyholder.

Applying the *Anderson* test to the amended petitions at hand, we conclude that they allege sufficient facts demonstrating the absence of a reasonable basis for denying benefits of the policy and Union's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. The element of unreasonableness is satisfied by the allegations that Union denied its uninsured motorist coverage to the Braesches despite the fact that the uninsured driver's negligence was the sole and proximate cause of Lori Braesch's death. The allegations of bad faith regarding Union's tactics in refusing to settle meet the second prong of the test.

We next examine the measure of damages to be awarded for a bad faith settlement of a first-party insurance claim. The appellants alleged in their respective amended petitions that they were "forced to endure emotional pain and suffering." As the appellants have already recovered general damages in their prior contract action and have not pleaded special damages, we

concern ourselves with only the recovery for mental distress. Case law instructs that the appellants may recover damages for mental distress. See, *Chavers v. National Sec. Fire & Cas. Co.,* 405 So. 2d 1 (Ala. 1981); *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986); *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313 (R.I. 1980).

The foregoing authorities adhere to the tort principles regarding damages existent in this state. Damages for mental anguish are not, as a general rule, recoverable in actions for breach of contract unless the breach amounts in substance to willful or independent tort. *Brunson v. Ranks Army Store,* 161 Neb. 519, 73 N.W.2d 803 (1955). As we have stated, the instant action is grounded in tort. Recovery for mental distress damages is permitted in cases involving other intentional torts, such as assault and battery, see *Duncza v. Gottschalk,* 218 Neb. 879, 359 N.W.2d 813 (1984), and false imprisonment, see *Jensen v. Barnett,* 178 Neb. 429, 134 N.W.2d 53 (1965). Indeed, this court has recognized recovery solely for mental distress arising out of negligent conduct even though there is no physical injury. See *James v. Lieb,* 221 Neb. 47, 375 N.W.2d 109 (1985). A recovery for mental distress in this action is in harmony with the general principle that the measure of recovery in all civil cases is compensation for the injury sustained. See *Prather v. Eisenmann,* 200 Neb. 1, 261 N.W.2d 766 (1978). Recognizing that damages must be proximately caused by the tortious conduct, see *Tetherow v. Wolfe,* 223 Neb. 631, 392 N.W.2d 374 (1986), we further note that the amended petitions allege that the mental suffering was the direct and proximate result of Union's bad faith action in refusing to settle the claim. It is, therefore, proper for the appellants' amended petitions to allege mental suffering as a basis for recovery under the tort of bad faith.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In their second theory of recovery, the appellants allege that Union's actions constituted the tort of outrage. The tort of outrage is also known as the intentional infliction of emotional distress. See *Gall v. Great Western Sugar Co.,* 219 Neb. 354,

363 N.W.2d 373 (1985).

To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that (1) there has been intentional or reckless conduct, (2) the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Id.* An extremely disabling emotional response is required. *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981).

The amended petitions do not allege conduct sufficiently outrageous, nor do they allege sufficiently severe emotional distress. See, *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906 (Iowa 1990); *Debolt v. Mutual of Omaha*, 56 Ill. App. 3d 111, 371 N.E.2d 373 (1978). The trial court properly dismissed those parts of the petitions that alleged intentional infliction of emotional distress.

The judgment is reversed and the cause remanded with directions to allow the plaintiffs to proceed upon their amended petitions as to their first theory of recovery.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.