# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1710

_____

| | | |
|---|---|---|
| Home Insurance Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Aetna Insurance Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  October 20, 2000
Filed:  January 8, 2001

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This appeal originates from a dispute between two insurance companies over the amount that each must pay in the joint settlement of a claim. Home Insurance Company argues that Aetna Insurance Company's policy provides two separate insuring agreements applicable to the settlement—each containing a $250,000 limit—that require Aetna to pay a total of $500,000. Aetna maintains that only one insuring agreement exists relevant to the settlement and that it limits Aetna's liability to

$250,000.  The District Court,[1] after carefully reviewing relevant Nebraska insurance law and the disputed policy, determined that Aetna's policy unambiguously contains a single insuring agreement relevant to the settlement claim and that the policy's terms limit Aetna's liability to $250,000.  We affirm.

I.

In June 1998, insurance companies representing the University of Nebraska Board of Regents settled a medical malpractice claim.[2]  At the time that the alleged malpractice took place, Aetna provided primary insurance coverage and Home provided excess umbrella liability coverage[3] for the University.  Aetna contributed $250,000 and Home contributed $650,000 in the payment of the settlement.[4]  Home maintained, both prior and subsequent to the settlement, that Aetna remained responsible for an additional $250,000 toward the settlement under its policy with the University.  Home therefore argued that it should have contributed only $400,000.  Despite the disagreement, Home paid the disputed amount in order to avoid delay of

---

[1]The Honorable Thomas M. Shanahan, United States District Court for the District of Nebraska.

[2]The details of the settled claim are unnecessary for this decision, except to note that it involved a single malpractice claim brought by a single individual.

[3]This type of insurance provides coverage for occasions when the underlying primary liability insurance limits are exhausted, as occurred in the underlying settlement.

[4]A third insurance company, not a party to this suit, contributed an additional $1.1 million toward the settlement.

the settlement and to protect itself from possible tort liability.[5]  It then initiated suit asserting subrogation rights to the disputed amount.

Both parties agree that Aetna's policy requires it to pay at least $250,000 toward the settlement of the malpractice claim.  The dispute centers on whether different provisions under the policy represent independent insurance coverage agreements requiring Aetna to pay an additional $250,000 toward the settlement.

The Aetna policy contains two relevant provisions regarding medical liability coverage.  Coverage A provides comprehensive general liability insurance for bodily injury and is extended to cover malpractice claims by Endorsement #1.  Coverage O, entitled "Hospital Professional Liability," also outlines medical malpractice liability terms.  Both Home and Aetna agree that these provisions of Aetna's policy provide insurance coverage for the medical malpractice events leading to the settlement.  There is also no dispute that both Coverage A[6] and Coverage O contain language limiting liability for the settlement to $250,000.  However, while Aetna reads these attachments as demonstrating a consistent agreement limiting its total liability to $250,000, Home interprets them as separate insurance agreements each providing $250,000 of coverage.

---

[5]Under Nebraska law, bad faith failure to settle a claim by an insurance company can serve as the basis for a tort claim.  Lincoln Benefit Life Co. v. Edwards, 45 F. Supp. 2d 722, 754 (D. Neb. 1999); Braesch v. Union Ins. Co., 464 N.W.2d 769, 772 (Neb. 1991), overruled on other grounds by Wortman ex rel. Wortman v. Unger, 578 N.W.2d 413, 417 (Neb. 1998); Hadenfeldt v. State Farm Mut. Auto. Ins. Co., 239 N.W.2d 499, 502-03 (Neb. 1976).

[6]The term Coverage A will be used to refer to both the general terms of Coverage A, as well as to its extension by Endorsement #1.

The District Court held that no ambiguity exists in the insurance contract and that the policy could only be construed to provide a single agreement that limits Aetna's liability to $250,000. Home appeals.

## II.

Nebraska law controls our analysis of the insurance policy in this diversity action. See Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) ("[W]hen federal courts are exercising diversity jurisdiction, the rules for construing insurance policies are controlled by state law."). We review the District Court's interpretation of Nebraska law and its interpretation of the insurance contract de novo. St. Paul Fire & Marine Ins. Co. v. Mo. United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996).

Under Nebraska law, courts must construe insurance policies as contracts and "give effect to the parties' intentions at the time the contract was made." Katskee v. Blue Cross/Blue Shield of Neb., 515 N.W.2d 645, 649 (Neb. 1994). In discerning intent, courts should determine as a matter of law whether a policy is ambiguous. Id. If "a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings" it is ambiguous. Callahan v. Washington Nat'l Ins. Co., 608 N.W.2d 592, 598 (Neb. 2000). Courts should determine whether a contract is ambiguous "on an objective basis, not by the subjective contentions of the parties" and are therefore not compelled to find ambiguity simply because the parties suggest opposing interpretations. Fraternal Order of Police, Lodge No. 2 v. County of Douglas, 612 N.W.2d 483, 487 (Neb. 2000); see also Callahan, 608 N.W.2d at 598.

If a court concludes that a policy is ambiguous it "may employ rules of construction and look beyond the language of the policy to ascertain the intention of the parties." Katskee, 515 N.W.2d at 649. However, if a court determines that a policy is not ambiguous then it "may not resort to rules of construction, and the terms are to

be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them." Id.

III.

Home first asserts that Aetna's policy is ambiguous because it contains similar terms covering malpractice under the provisions of Coverage A and Coverage O. It then argues that differences in the exact terms used to limit liability for the two provisions[7] provide further evidence of ambiguity and the parties' intent that they stand as separate and independent insuring agreements. We first note the difficulty in reconciling how Home can argue that a policy is ambiguous based on provisions containing both similar and different terms, because such an argument seems applicable to all but identical provisions. Taking this argument as given, however, we find that by merely pointing out differences in the terms, Home only demonstrates the relevance of why the contracting parties included both provisions in the agreement, and not an ambiguity or intent to establish separate and independent insuring agreements. Additionally, focusing on similarities in the terms under the provisions alone only proves a consistent intent. This consistent intent is demonstrated by the policy's repeated language declaring that any malpractice insurance provided under the policy is limited to $250,000 for a claim such as the one that was settled.

On the first page of Aetna's policy, the declaration for the comprehensive general liability insurance section—applicable to Coverage A—limits liability to $250,000 for each person injured. Then the terms limiting liability for Coverage A state that "[t]he limit of bodily injury liability stated in the declarations as applicable to 'each person' is

---

[7]Home points out that where Coverage A's limit for "each person" limits liability for "injury sustained by one person as the result of <u>any one occurrence</u>," while Coverage O's limit for "each claim" limits liability "for all damages because of <u>each claim or suit</u> covered hereby." (emphasis added).

-5-

the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence."  Endorsement #1, extending Coverage A to malpractice events, reiterates that the liability coverage is limited to $250,000 for each person.  Further, the schedule for Coverage O similarly limits hospital professional liability under the policy to $250,000 for each claim.  Coverage O also states under its "Limits of Liability" heading that "[t]he limit of liability stated in the schedule as applicable to 'each claim' is the limit of the company's liability for all damages because of each claim or suit covered hereby."[8]  While these provisions use slightly different terms, they demonstrate a consistent and unambiguous intent to limit liability to $250,000 for a single claim, brought by a single individual, as in the disputed settlement.

Reading the policy as a whole, we find no merit in Home's argument that Aetna's policy is ambiguous.  Therefore we accord the terms of the policy "their plain and ordinary meaning as the ordinary or reasonable person would understand them." Katskee, 515 N.W.2d at 649.  Applying this standard, we conclude that Coverage A and Coverage O are not separate and independent insuring agreements, but rather part of a single insuring agreement that limits Aetna's liability for the underlying settlement

---

[8]Both Coverage A and Coverage O also specifically provide that their limits of liability apply regardless of the number of insureds under the policy. Coverage A states that its limits of liability apply "[r]egardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage." Similarly, Coverage O also explicitly states that the limits of liability apply "[r]egardless of the number of insureds under this insurance." Therefore, although the point is not raised by either party, Aetna's policy appears to limit its liability for the claim in this case to $250,000 regardless of the number of insureds involved in the settlement.

to the $250,000 that it has already contributed.[9]  For the reasons stated above, the decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]Holding for Aetna on this basis, we find it unnecessary to address the sundry alternative grounds for affirmance that Aetna argued in its brief.