# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3037

_____

National American Insurance Company,   *
an Oklahoma corporation,   *
      *
      Appellee,   *
      *
    v.   *
      *
W & G, Inc., a Nebraska corporation,   *   Appeal from the United States
      *   District Court for the
      Defendant,   *   District of Nebraska.
      *
Republic Western Insurance Company,   *
an Arizona corporation; Colberg   *
Harvesting, Inc., a Kansas corporation;   *
Colberg Transportation, Inc., a Kansas   *
corporation,   *
      *
      Appellants.   *

_____

Submitted: February 13, 2006
Filed: March 10, 2006

_____

Before RILEY, MELLOY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

This appeal involves a dispute between two insurance companies over the amount each must pay in the joint settlement of a personal injury action. National

American Insurance Company (National American) contends it is an excess insurer and entitled to equitable subrogation from Republic Western Insurance Company (Republic Western) for attorney fees, costs, and amounts contributed to the settlement of the underlying personal injury action. The district court[1] entered an amended summary judgment order, holding Republic Western's coverage is primary and National American is entitled to equitable subrogation from Republic Western. Republic Western appeals. For the following reasons, we affirm.

## I.    BACKGROUND

On August 13, 2001, Jonathan Howard (Howard), an employee of W & G, Inc. (W & G), was operating a three-axle, tandem grain truck owned by Colberg Transportation, Inc. (Colberg). While carrying harvested grain from a field to a grain elevator, Howard failed to stop at a stop sign at a public roadway intersection near Linton, North Dakota, and hit a car driven by Chelsea Quellhorst (Quellhorst), seriously injuring Quellhorst.

On October 18, 2001, Quellhorst brought a personal injury action against Howard, Colberg, and W & G. Republic Western insured Colberg through a commercial auto policy, and Republic Western provided Colberg and Howard's defense in the Quellhorst personal injury action. National American insured W & G through a two-part policy including commercial general liability (CGL) coverage and business auto coverage. National American defended W & G in the Quellhorst personal injury action without a reservation of rights. On April 14, 2003, National American tendered W & G's defense to Republic Western. Republic Western declined to defend W & G.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

In October 2003, the parties settled the Quellhorst personal injury action by agreeing to pay Quellhorst $600,000, with National American contributing $25,000 and Republic Western contributing the balance.

National American brought this declaratory judgment action, asking the district court to determine which insurance policy provides primary coverage and whether National American has a right to equitable contribution from Republic Western for amounts expended on behalf of W & G. Upon review of the parties' cross-motions for summary judgment, the district court held Republic Western's coverage is primary, but National American failed to reserve its right to equitable subrogation from Republic Western by participating in settlement of the Quellhorst personal injury action. National American then filed a motion to alter or amend, asking the district court to consider the language of the settlement agreement stating none of the parties waived their rights by participating in the agreement. The district court amended its judgment by holding National American is entitled to equitable subrogation from Republic Western for the amounts it expended on behalf of W & G.

Republic Western appeals the district court's amended summary judgment order, arguing (1) National American owes primary coverage under the CGL policy, (2) National American owes primary coverage under the business auto policy, and (3) National American is estopped from seeking equitable subrogation.

## II. DISCUSSION

We review de novo a grant of summary judgment, considering the facts in the light most favorable to the nonmoving party. Dowdle v. Nat'l Life Ins. Co., 407 F.3d 967, 970 (8th Cir. 2005). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Dowdle, 407 F.3d at 970. In insurance coverage actions involving diversity of citizenship, state law controls our analysis of the insurance

-3-

policy.  See Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001).

Thus, as the parties agree, we apply Nebraska law in this case.  See id.

### A.    Coverage Under the CGL Policy

Republic Western first contends the district court erred in deciding National American's CGL policy provides excess, rather than primary, coverage.  The National American CGL policy states, in relevant part:

Exclusions
This insurance does not apply to:

. . . .

g.  Aircraft, Auto Or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading and unloading".

Application of this provision's plain language excludes primary coverage. Quellhorst suffered "bodily injury" in the accident, which arose out of the "use" of an "auto" "operated by" Howard, an "insured."   Accordingly, the district court correctly held the National American CGL policy does not provide primary coverage.

Republic Western attempts to create a fact issue by arguing the grain truck driven by Howard was not an "auto," but instead was "farm machinery," which is not excluded under the National American CGL policy.  This argument fails.  Republic Western does not point to any testimony or evidence showing the grain truck was designed for off-road use or solely as "farm machinery."  Cf. Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").  To the contrary, the evidence of record supports the conclusion

-4-

the grain truck was an "auto" for purposes of the National American CGL policy: Howard testified he drove the truck to haul grain from the edge of a field being harvested to a grain elevator, and the accident occurred on a public roadway. The use of the vehicle at the time of the collision, hauling grain on a public road leading to a grain elevator, is strong evidence demonstrating the vehicle was being used as an "auto" and not as "farm machinery." Thus, Republic Western failed to create a genuine issue as to any material fact, and the district court correctly entered summary judgment in favor of National American on this issue.

## B.      Coverage Under the Business Auto Policy

Republic Western next argues the district court erred in holding National American's business auto policy provides excess, rather than primary or co-primary, coverage. The National American business auto policy provides excess coverage for "any covered 'auto' you don't own," and provides primary coverage "for any liability assumed under an 'Insured contract.'" The policy defines an "Insured contract" as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Republic Western contends W & G and Colberg acted pursuant to a "joint venture" which, at the time of the accident, constituted an "Insured contract" triggering primary coverage under the National American business auto policy. Republic Western fails, however, to provide any argument or cite any case law explaining how the joint venture constituted an "Insured contract" for purposes of the National American business auto policy. No evidence in the record establishes W & G assumed Colberg's tort liability, and we are not aware of any Nebraska law which would impose liability on W & G under an "Insured contract" theory, as defined in the policy. To the contrary, under Nebraska law, the vehicle owner's

-5-

insurance provides primary coverage. See Turpin v. Standard Reliance Ins. Co., 99 N.W.2d 26, 37 (Neb. 1959). Because Republic Western fails to prove the joint venture constituted an "Insured contract," and under Nebraska law the primary insurance follows the vehicle, the district court did not err in determining the Republic Western policy provides primary coverage and the National American business auto policy provides excess coverage.

## C. Equitable Subrogation

Finally, Republic Western argues National American is estopped from seeking equitable subrogation because National American voluntarily assumed W & G's defense without issuing a reservation of rights. The district court rejected Republic Western's argument on the grounds National American "expressly did not waive its right to seek subrogation from Republic Western in the Settlement Agreement."

We agree with the district court's conclusion that National American is not estopped from seeking equitable subrogation from Republic Western, but we disagree, in part, with the district court's reasoning. The settlement agreement did not necessarily preserve National American's subrogation right; rather, National American never waived its subrogation right in the first place. An insurer does not waive its right to subrogation against another insurer based on the first insurer's conduct with its own insured. See St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202, 208 (5th Cir. 1996) (holding primary and excess insurers who defended the insured did not waive their right to rely on "other insurance" clauses in their policies by failing to reserve that right); Attorneys Liab. Prot. Soc'y v. Reliance Ins. Co., 117 F. Supp. 2d 1114, 1122 (D. Kan. 2000) (concluding that because a reservation of rights is an agreement "between the insurer and the insured, the insurer's failure to obtain such an agreement does not bar a contribution claim against a co-insurer"). National American's failure to issue a reservation of rights to W & G neither bars nor affects National American's subrogation claim against Republic Western.

As the primary insurer, Republic Western had a duty to provide W & G's defense and pay any sums for which W & G is liable to Quellhorst. National American tendered W & G's defense to Republic Western, but Republic Western declined to defend W & G. Accordingly, Republic Western is liable as primary insurer for the amounts National American incurred for W & G's defense and in settlement of the Quellhorst personal injury action.

## III.   CONCLUSION

For the foregoing reasons, we affirm.

_____